**George Henson MIREE et al.,**
**Plaintiffs-Appellants,**

v.

**UNITED STATES of America et al.,**
**Defendants-Appellees.**

**Judith Anita PHILLIPS, widow of**
**David Emanuel Phillips, deceased,**
**Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Third-Party Plaintiff-Appellee.**

**DeKALB COUNTY, GEORGIA,**
**Defendant-Appellee,**

v.

**MACHINERY BUYERS CORP. et al.,**
**Third-Party Defendants-Appellees.**

**William Michael FIELDS,**
**Plaintiff-Appellant,**

v.

**UNITED STATES of America,**
**Defendant-Appellee,**

**DeKalb County, Georgia, et al.,**
**Defendants-Appellees.**

**FIREMAN'S FUND INSURANCE COMPANY, Plaintiff-Appellant,**

v.

**UNITED STATES of America,**
**Defendant-Appellee,**

**DeKalb County, Georgia, et al.,**
**Defendants-Appellees.**

**Pearlie CHAISSON, Plaintiff-Appellee,**

v.

**SOUTHEAST MACHINERY, INC.,**
**Defendant and Third-Party**
**Plaintiff-Appellant,**

v.

**UNITED STATES of America et al.,**
**Third-Party Defendants-Appellees.**

Nos. 74–3670, 74–3822, 74–3864, 74–3870, 74–3881.

United States Court of Appeals, Fifth Circuit.

Jan. 30, 1976.

Rehearing En Banc Granted April 5, 1976.

Hugh M. Dorsey, Jr., Jule W. Felton, Jr., Atlanta, Ga., Gilbert E. Johnston, Alan W. Heldman, Birmingham, Ala., for plaintiffs-appellants in 74–3670.

John W. Stokes, U. S. Atty., William D. Mallard, Jr., Asst. U. S. Atty., Atlanta, Ga., George M. Fleming, Trial Atty., U. S. Dept. of Justice, Morton Hollander, Ronald R. Glancz, Washington, D.C., for U. S. A.

W. Meade Burns, Jr., F. Clay Bush, Atlanta, Ga., Wendell K. Willard, Decatur, Ga., for DeKalb County.

J. Arthur Mozley, Atlanta, Ga., for S. E. Machinery, Machinery Buyers Corp. and Fireman's Fund Ins. Co.

Baxter H. Finch, Atlanta, Ga., for defendants-appellees in 74–3670.

Robert W. Patrick, Jr., Atlanta, Ga., Herbert S. Falk, Jr., Greensboro, N.C., for defendants-appellees in 74–3670 and Fields.

A. Russell Blank, Atlanta, Ga., for plaintiff-appellant in 74–3822.

Robert M. Travis, William Q. Bird, Atlanta, Ga., for plaintiff-appellant in 74–3864.

Robert Stringer, Decatur, Ga., for Chaisson.

Before GODBOLD, DYER and MORGAN, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

On February 26, 1973, a Lear Jet crashed shortly after take-off from the DeKalb-Peachtree Airport. The alleged cause of the crash was the ingestion of a large number of birds swarming over the airport and adjacent county garbage dump. Damage was substantial; all passengers were killed, the plane was destroyed, an individual on the ground was severely injured by burning jet fuel that fell from the disabled plane shortly before crashing, and property at the crash site was extensively damaged. Separate actions were brought by the passengers' survivors,[1] the burn victim,[2] the owner of the plane,[3] and the owner of the property at the crash site.[4] The various plaintiffs, suing in diversity, asserted theories of negligence, nuisance, and breach of contract. Defendant DeKalb County moved to dismiss on grounds that it was immune from suit under Georgia Law. Defendant's motion was granted, and the plaintiffs appealed.

## I.

The plaintiffs present a prima facie case of negligence that would certainly survive a motion to dismiss in the absence of any immunity question. The essence of their claim is that large numbers of birds had flocked around the garbage dump adjacent to the airport for a considerable period of time, that the county was aware of the bird problem prior to the crash, and that birds had interfered with planes on prior occasions. All this, of course, is to no avail if counties are immune from being sued in negligence. Relying heavily on three cases, the plaintiffs contend that counties are not immune from negligence suits. First, they argue that the Uniform Airports Law (UAL)[5] was held to constitute a statutory waiver of *municipal* immunity in *Caroway v. City of Atlanta*, 85 Ga.App. 792, 70 S.E.2d 126 (1952), a case involving airport negligence. Next, they cite *Southern Airways v. DeKalb County*, 102 Ga.App. 850, 118 S.E.2d 234 (1960), for the proposition that suits may be maintained against counties for breach of contract under the UAL, because operation of an airport is a proprietary function. Finally, they tie up the argument with a quotation from *Taylor v. King*, 104 Ga.App. 589, 122 S.E.2d 265 (1961), to the effect that for

---

1. In No. 74–3670, George Henson Miree, Claude Estes Miree, and Dorothy Estes Miree sue as survivors to their parents, Mr. and Mrs. Richardson F. Miree. In No. 74–3822, Judith Anita Phillips sues as survivor to her husband, David E. Phillips.

2. No. 74–3864, *William Michael Fields v. De-Kalb County, Georgia.*

3. In No. 74–3870, Fireman's Fund Insurance Co. sues as assignee to Southeast Machinery's claim for destruction of the Lear Jet.

4. No. 74–3881, *Pearlie Chaisson v. Southeast Machinery, Inc.*

5. Ga. Code Ann. § 11–201 *et seq.*

immunity purposes there is no distinction between municipalities and counties in cases involving airports authorized under the UAL. We must conclude, however, that when read in context of the surrounding case law and statutory framework, these cases stand for much narrower propositions.

An examination of the statutory bases of immunity for counties and municipalities reveals distinctly different provisions. County immunity is provided for in Ga. Code Ann. § 23–1502. "A county is not liable to suit for any cause of action unless made so by statute." While almost as succinct in its language, the provision for municipal immunity in Ga. Code Ann. § 69–301 is not nearly so unequivocal. "Municipal corporations shall not be liable for a failure to perform, or for errors in performing, their legislative or judicial powers. For neglect to perform, or for improper or unskillful performance of their ministerial duties, they shall be liable."

The operational distinction between these statutes has long been recognized by the Georgia courts. The second sentence of the municipal immunity statute has been consistently read to waive immunity whenever a municipality undertakes a proprietary function. Thus, in *Ware County v. Cason*, 189 Ga. 78, 79, 5 S.E.2d 339 (1939), the Georgia Supreme Court held a county hospital immune to suit even though prior cases had found no immunity for city hospitals.

> There is a statute which, on the basis of distinction between governmental functions of municipal corporations and ministerial acts, inhibits municipal liability for damages flowing from breach of duty in regard to the former, and imposes municipal liability for breach of duty in regard to the latter. Code, § 69–301; *Cornelisen v. Atlanta*, 146 Ga. 416 (91 S.E. 415). But there is no such statute relating to counties and no statute making a county liable to suit for tort based on negligence in operating a hospital causing injury to a pay patient therein.

Accord, *Purser v. Dodge County*, 188 Ga. 250, 251–52, 3 S.E.2d 574 (1939).

It follows that the requirements for resisting immunity in cases involving municipal and county airports is significantly different. To sue a municipal airport, a plaintiff need only show that the operation of a municipal airport is a proprietary function; to sue a county airport, a plaintiff must show an express statutory waiver of immunity. When read in light of this distinction it becomes apparent that the extensive discussion of the UAL in *Caroway v. City of Atlanta*, 85 Ga.App. 792, 70 S.E.2d 126 (1952), was not intended to demonstrate that the statute waived immunity. Rather, the intent was to demonstrate that, despite language in the UAL which could have been read to say that the operation of airports is a governmental function, the operation of an airport is a proprietary function, and, accordingly, is susceptible to suit.

In *Southern Airways v. DeKalb County*, 102 Ga.App. 850, 118 S.E.2d 234 (1960), the court made considerable use of the proprietary function discussion in *Caroway*, but not, as suggested by the plaintiff, for the purpose of finding either that the UAL constitutes a statutory exception or that the county participation in a proprietary function waives immunity. Rather, the purpose of the court's inquiry into whether the operation of an airport constituted a proprietary function was to fit this case within the framework of a line of Georgia cases that allow County Commissioners to enter into binding contracts extending beyond their term of office only if the contract relates to a proprietary function of the county. *Id.* at 854–855, 118 S.E.2d 234.

On motion for rehearing the court in *Southern Airways* clarified its position as to the county's lack of immunity from suit on the contract. The court ruled that since the UAL expressly authorizes the county to contract, the logical inference of that statute is that the county may be sued for breach of contract. This is consistent with several other

Georgia decisions which hold that statutory authority to contract is necessarily a statutory waiver of immunity to suit for breach. *Hancock County v. Williams*, 230 Ga. 723, 198 S.E.2d 659 (1973); *Deason v. DeKalb County*, 222 Ga. 63, 148 S.E.2d 414 (1966).

Finally, an examination of *Taylor v. King*, 104 Ga.App. 589, 122 S.E.2d 265 (1961), reveals that the language relied upon by the plaintiffs was taken out of context. The *Taylor* case involved alleged negligence by a municipal airport. Accordingly, it was necessary for the plaintiffs to demonstrate that operation of the airport was a proprietary function to avoid immunity. Relying on the *Caroway* and *Southern Airways* cases, the court concluded that the operation of this municipal airport was a proprietary function. In the course of its discussion of the *Southern Airways* case the court said: "For this purpose, there is no distinction between municipal and county liability." The antecedent to which "this purpose" refers is not, however, determination of immunity, as suggested by the plaintiffs, but only determination of whether or not an airport is a proprietary function.[6] An examination of the Uniform Airports Law reveals no language that even vaguely suggests that the legislature intended to waive county immunity for negligence in the operation of airports. Having been cited no other statutory authority, we necessarily must conclude that the county is immune from suit on theory of negligence.

## II.

The second theory propounded by the plaintiffs is that the county is liable for special damages resulting from the maintenance of a nuisance. The district court overruled this theory, holding that in the absence of statutory authority to be sued, the county is immune under Ga. Code Ann. § 23–1502. In response, the plaintiffs assert that the requisite statutory authority to sue exists in Ga. Code Ann. § 72–103.

Generally, a public nuisance gives no right of action to any individual. If a public nuisance shall cause special damage to an individual, in which the public did not participate, said special damage shall give a right of action. In addition, they cite several Georgia cases holding a county liable for maintenance of a nuisance.

█ Although several Georgia cases have held either a municipality or a county liable for a nuisance, none has cited § 72–103 as its authority for not holding the county immune. We could read this statute to create an exception to immunity only if we read "public nuisance" to mean a nuisance created or maintained by a public body. Ga. Code Ann. § 72–102, however, defines public and private nuisance in terms of who is affected and who is injured, not in terms of the perpetrator of the nuisance. Thus, it must be concluded, that § 72–103 does not create a statutory exception to the general rule of immunity. Rather, its function, like several comparable Georgia statutes,[7] is to create a cause of action for a particular kind of wrong.

There are, nevertheless, circumstances under which a county may be sued in nuisance. In both *Nalley v. Carroll County*, 135 Ga. 835, 70 S.E. 788 (1911), and *DeKalb County v. McFarland*, 223 Ga. 196, 154 S.E.2d 203 (1967),[8] counties were held liable for flood damage caused by a county public works project. Neither case, however, made clear its basis for finding the counties susceptible to suit. In *Baranan v. Fulton County*, 232 Ga. 852, 209 S.E.2d 188 (1974), the Georgia Supreme Court clarified the situation. The counties were not immune in those cases because Article 1, § 3, para. 1 of the Georgia Constitution[9] provides that private property shall not be taken for public purposes without just and ade-

---

6. *See also, City of Macon v. Powell*, 133 Ga. App. 907, 908, 213 S.E.2d 63 (1975).

7. *See, e. g.*, Ga. Code Ann. § 105–103 which creates a cause of action for an ordinary tort.

8. *See also*, later opinions in the *McFarland* case at 224 Ga. 618, 163 S.E.2d 827 (1968); 226 Ga. 321, 175 S.E.2d 20 (1970); 231 Ga. 649, 203 S.E.2d 495 (1974).

9. Ga. Code Ann. § 2–301.

quate compensation. The effect of the flooding was to take the plaintiffs' land for public purposes, thus creating an action for compensation under the Constitution, and accordingly, an exception to § 23–1502.[10]

■ The injuries that occurred to the plaintiffs in the present case do not parallel those of the plaintiffs in *Baranan, McFarland,* or *Nalley.* In those cases land was rendered useless as the incidental result of a public project; the taking was an inevitable result of the public project, and the county knew or should have known that flooding would occur. The action was for compensation for land, the taking of which was necessary to the completion of the project. In this case, the injury to property resulting from the air crash is not a necessary and foreseeable consequence of maintaining a garbage dump and, consequently, not comparable to the flooding that results from river and drainage projects. Thus, we must conclude that there is no statutory exception under which these plaintiffs may sue the county for nuisance.

We reach this conclusion despite a line of cases that hold municipalities liable for personal injuries resulting from a continuing nuisance. *Town of Ft. Oglethorpe v. Phillips,* 224 Ga. 834, 165 S.E.2d 141 (1968); *City of Blue Ridge v. Kiker,* 189 Ga. 717, 7 S.E.2d 237 (1940); *City Council of Augusta v. Cleveland,* 148 Ga. 734, 98 S.E. 345 (1919); *City of Gainesville v. Pritchett,* 129 Ga.App. 475, 199 S.E.2d 889 (1973).[11] These cases allow municipalities to be held liable in nuisance despite § 69–301. While the cases do not explain why the municipalities are not immune, it is clear from several opinions that it is not because they fall within the exception for proprietary functions. Instead, this line of cases must be read to be a common law exception to the general statutory rule expressed in § 69–301 that municipalities are immune. Such an exception cannot be created for counties, because § 23–1502 explicitly requires that exceptions to immunity be created by statute. In

accord with this reading of *Town of Oglethorpe v. Phillips, supra,* is *Sheley v. Board of Public Education for City of Savannah and County of Chatham,* 132 Ga.App. 314, 317–18, 208 S.E.2d 126 (1974), *aff'd,* 233 Ga. 487, 212 S.E.2d 627 (1975), in which the Georgia Court of Appeals declined to apply the immunity exception of the *Ft. Oglethorpe* case to cases in which governmental subdivisions other than municipalities were sued in nuisance. See also, *Williams v. Ga. Power Co.,* 233 Ga. 517, 519, 212 S.E.2d 348 (1975). Accordingly, we hold that these cases do not create a cause of action in nuisance against counties.

### III.

■ Finally, the plaintiffs seek to sue the county as third party beneficiaries to a contract between the Federal Aviation Administration (FAA) and DeKalb County. That contract provided for, among other things, the safe operation of the airport and surrounding properties controlled by the county. The district court rejected this claim, holding that counties are immune from suit for breach of contract. In support of that conclusion they cite *Purser v. Dodge County,* 188 Ga. 250, 3 S.E.2d 574 (1939). That case, however, never reached the question. "The question certified does not involve a determination as to whether a county would be liable on a contract which the law might expressly or impliedly authorize it to make." *Id.* at 253, 3 S.E.2d at 575. It is now a well settled proposition of Georgia law that if a statute authorizes a county to contract, it also implicitly creates a cause of action for breach. Since the action against the county is authorized by statute, it is not barred by § 23–1501. *Hancock County v. Williams,* 230 Ga. 723, 724, 198 S.E.2d 659 (1973); *Deason v. DeKalb County,* 222 Ga. 63, 65, 148 S.E.2d 414 (1966); *Decatur County v. Praytor, Howton and Wood Contracting Company,* 163 Ga. 929, 933–34, 137 S.E. 247 (1927); *Southern Airways Co. v. DeKalb County,* 102 Ga.App. 850, 865, 118 S.E.2d 234 (1960) (on motion for

---

10. *Accord Williams v. Ga. Power Co.,* 233 Ga. 517, 519, 212 S.E.2d 348 (1975).

11. *See also* Annot., 34 A.L.R.3d 1008, 1044–49 (1970).

rehearing). Since it is clear that DeKalb County may be sued for breach of contract, the only remaining question is whether the plaintiffs may sue as third party beneficiaries to the contract between DeKalb County and the FAA.

■ Actions on contracts by third party beneficiaries are explicitly provided for by Ga. Code Ann. § 3–108. " . . . the beneficiary of a contract made between other parties for his benefit may maintain an action against the promisor on said contract." The case law interpreting this statute has, however, limited its application to intended beneficiaries, as distinguished from incidental beneficiaries. Compare *Robinson Explosives, Inc. v. Dalon Contracting Co.*, 132 Ga. App. 849, 851–52, 209 S.E.2d 264 (1974), with *Stewart v. Gainesville Glass Co.*, 131 Ga.App. 747, 752–53, 206 S.E.2d 857 (1974), aff'd, 233 Ga. 578, 212 S.E.2d 377 (1975). A typical situation under which a third party beneficiary cannot sue is presented by *Lee v. Petty*, 133 Ga.App. 201, 210 S.E.2d 383 (1974). In that case the plaintiffs attempted to sue Ware County under a contract between the county and a leasing company that required the county to obtain liability insurance. Merely because the plaintiffs would benefit from the existence of an insurance policy was not sufficient. The court held that "[w]ithout question there was no contemplation that the appellants [would] be beneficiaries under the terms of the contract and hence there is no basis for their recovering under this case." *Id.* at 206, 210 S.E.2d at 386. Since the purpose of the insurance clause was not to protect the public, but to determine responsibilities and liabilities between the parties, injured members of the public could not sue.

■ The remaining question, therefore, is whether the safety provisions in the contract between DeKalb County and the FAA were intended to benefit the public. The county argues that such a showing is not sufficient; not only must the parties have intended to benefit the public, but they also must have intended to compensate members of the public who are injured as a result of a breach. Under Georgia law, however, it is well settled that a contract with a public body confers a benefit on the public if it is clear from the appropriate contractual provisions that the parties intended those provisions to benefit the public.

In *Smith v. Ledbetter Brothers, Inc.*, 111 Ga.App. 238, 141 S.E.2d 322 (1965), the defendant had entered into a road building contract with the state of Georgia. Included in that contract was an agreement that the defendant would "provide all safeguards, safety devices, and protective equipment and take any other needed actions, on his own responsibility or as the contracting officer may determine, reasonably necessary to protect . . . the safety of the public . . . ." *Id.* at 239, 141 S.E.2d at 324. The plaintiff in that case alleged that the defendant was negligent in carrying out his contractual obligation to provide for the safety of the public, and that this negligence had resulted in the plaintiff's injury. The court held that the plaintiff could sue for this breach. "A contract between the State Highway Department and a construction company by which the latter undertakes to provide for the safety of the public during the construction of the work inures to the benefit of the public, and a member of the public injured as a result of negligence in failing to do so may sue the contracting party directly." *Id.* at 240, 141 S.E.2d at 324. Accord *M. R. Thomason and Associates, Inc. v. Wilson*, 125 Ga.App. 658, 661–62, 188 S.E.2d 805 (1972). The court did not discuss whether the parties contemplated creating a cause of action for the public. The mere creation of a contractual duty for the public's benefit necessarily created a cause of action in the public for its breach.

■ The situation and contracts presently before the court are quite similar to those in the construction cases. DeKalb County's contract with the FAA provides that the county will operate the airport for the use and benefit of the public, will operate and maintain it in a

safe and serviceable condition, and will limit use of adjacent land so that it will not interfere with the safe use of the airport.[12] The county breached this contractual duty, and as a result of that breach the plaintiffs were injured. We hold that these contractual provisions inured to the benefit of the public, and, accordingly, the plaintiffs may sue for breach.

## IV.

 Some of the plaintiffs also argue that the purchase of an insurance policy by the county creates a cause of action. Georgia law, however, has consistently held that the purchase of liability insurance by a county, even if the policy contains an explicit clause prohibiting the insurance company for pleading the immunity of the county, neither waives the immunity of the county from suit, nor creates a direct action against the insurer. *Arnold v. Walton*, 205 Ga. 606, 611–14, 54 S.E.2d 424 (1949); *Revels v. Tift County*, 235 Ga. 333, 335, 219 S.E.2d 445 (1975); *Lee v. Petty*, 133 Ga. App. 201, 205–06, 210 S.E.2d 383 (1975).

In conclusion, we hold that DeKalb County is susceptible to suit on theory of breach of contract and that all of the plaintiffs may sue as third party beneficiaries to the contract between DeKalb County and the FAA. All other actions are barred by the immunity of the county. Accordingly, we reverse.

---

**12.** *See* Project Application, Sponsor's Assurances, paragraphs 2, 6, 7, and 13 (appearing in the appendix of No. 74–3870, *Fireman's Fund Insurance Co. v. United States*, at 80–81). The Project Application is incorporated into the Grant Agreement by reference (appearing in Appendix, *supra*, at 62).

**1.** Even if Georgia law should apply, the result would not be different. The majority recognizes that under Georgia law, only *intended*, and not *incidental* beneficiaries, may recover for breach of contract. As will be shown in this dissent, nothing in the grant agreements or the underlying statutes raises the status of the plaintiffs from incidental to intended beneficiaries.

**2.** As stated in *Clearfield Trust Co. v. United States*, 1943, 318 U.S. 363, 367, 63 S.Ct. 573, 575, 87 L.Ed. 838:

DYER, Circuit Judge (dissenting):

Although I agree with the majority's conclusion that DeKalb County is immune from suit for negligence and nuisance, I disagree with their conclusion that the county can be held liable by plaintiffs as third-party beneficiaries of the Federal Grant Agreement between the United States and the county. At most, plaintiffs are incidental beneficiaries of that agreement, not entitled to recover for breach of contract.

At the outset, the majority errs by looking to Georgia law in determining whether plaintiffs are third-party beneficiaries.[1] Although jurisdiction here is based upon diversity, the contract we are interpreting is one in which the United States is a party, and one which is entered into pursuant to authority conferred by federal statute. The necessity of uniformity of decision demands that federal common law, rather than state law, control the contract's interpretation. *United States v. Seckinger*, 1970, 397 U.S. 203, 90 S.Ct. 880, 25 L.Ed.2d 224; *Smith v. United States*, 5 Cir. 1974, 497 F.2d 500; *First National Bank v. Small Business Administration*, 5 Cir. 1970, 429 F.2d 280.[2]

Federal cases considering the question of when members of the public at large are third-party beneficiaries of a contract to which the United States is a party are few in number. However, those cases support the position of the Restatement of Contracts, § 145, that

> The application of state law, even without the conflict of laws rules of the forum, would subject the rights and duties of the United States to exceptional uncertainty. It would lead to great diversity in results by making identical transactions subject to the vagaries of the laws of the several states. The desirability of a uniform rule is plain. Even though we are here considering the liability of parties other than the United States, this same consideration controls, for if plaintiffs are third party beneficiaries with respect to the obligations of the county under the contract, then they would also be third-party beneficiaries with respect to the obligations of the United States.

such members of the public can recover damages under a contract with the United States to which they are not a party only when the contract manifests an intention that they be so compensated.[3] *West v. Morrison-Knudsen Company,* 9 Cir. 1971, 451 F.2d 493 (Injured employee of subcontractor is not third-party beneficiary of safety provisions of prime contract between United States and general contractor); *Hensley v. United States,* D.Mont.1968, 279 F.Supp. 548 (same); *Brotherton v. Merritt-Chapman & Scott Corp.,* 2 Cir. 1954, 213 F.2d 477 (provision in contracts requiring contractors to co-operate with one another was for benefit of government, and contractor could not recover from another as third-party beneficiary of that provision). *See also Johnson v. Redevelopment Agency,* 9 Cir. 1963, 317 F.2d 872; *Mahler v. United States,* 3 Cir. 1962, 306 F.2d 713; *Housing Corp. of America v. United States,* Ct. of Claims 1972, 468 F.2d 922, 199 Ct.Cl. 705; *Sayre v. United States,* N.D. Ohio 1967, 282 F.Supp. 175. It is not enough that the contract confer a benefit on the public at large.

Plaintiffs claim they are third-party beneficiaries of certain broad assurances made by the county and contained in the grant agreement, to the effect that the county will operate the airport safely and will control surrounding airport hazards.[4] However, these contract assurances appear to be nothing more than the assurances required by 49 U.S.C.A. § 1110.[5] I can find nothing in the language of the contract or the legislative history of 49 U.S.C.A. § 1110 to indicate that the purpose of these assurances was to create a cause of action on behalf of injured third-parties. In fact, the only remedy provided in the grant agreement for breach of these assurances is termination of the grant by the United States. As in *United States v. Mahler, supra,* it appears that the only purpose of these assurances was to make sure that federal funds were effectively employed and not wasted.

Other courts, in considering third-party claims under the Federal Airport Act, 49 U.S.C.A. § 1101 et seq., and the various agreements and assurances entered into pursuant to that act, have concluded that, although the act might incidentally benefit users of airports, both airlines and passengers, the primary purpose of the act was to establish a nationwide

---

3. Restatement of Contracts, § 145, provides in pertinent part:

A promisor bound to the United States or to a state or municipality by contract to do an act or render a service to some or all of the members of the public, is subject to no duty under the contract to such members to give compensation for the injurious consequences of performing or attempting to perform it, or of failing to do so, unless,

(a) an intention is manifested in the contract, as interpreted in light of the circumstances surrounding its formation, that the promisor shall compensate members of the public for such injurious consequences. . . .

4. These assurances provide in pertinent part:

The Sponsor will operate and maintain in a safe and serviceable condition the Airport and all facilities thereon and connected therewith which are necessary to serve the aeronautical users of the Airport other than facilities owned or controlled by the United States, and will not permit any activity thereon which would interfere with its use for airport purposes.

In addition, the Sponsor will not erect or permit the erection of any permanent structure or facility which would interfere materially with the use, operation, or future development of the Airport, . . .

Insofar as is within its power to the extent reasonable, the Sponsor will take action to restrict the use of land adjacent to or in the vicinity of the Airport to activities and purposes compatible with normal airport operations including landing and takeoff of aircraft.

5. 49 U.S.C.A. § 1110 provides in pertinent part:

As a condition precedent to his approval of a project under this chapter, the Administrator shall receive assurances in writing, satisfactory to him, that

(2) such airport and all facilities thereon or connected therewith will be suitably operated and maintained, with due regard to climatic and flood conditions;

(3) the aerial approaches to such airport will be adequately cleared and protected by removing, lowering, relocating, marking, or lighting or otherwise mitigating existing airport hazards and by preventing the establishment or creation of future airport hazards;

. . . . .

system of public airports adequate to meet the present and future needs of civil aviation. *Port of New York Authority v. Eastern Air Lines, Inc.,* E.D.N. Y.1966, 259 F.Supp. 745; *San Francisco v. Western Air Lines, Inc.,* 1962, 204 Cal. App.2d 105, 22 Cal.Rptr. 216; *Eastern Air Lines v. Town of Islip,* 1962, Sup., 229 N.Y.S.2d 117. There is nothing to indicate an intent to compensate members of the public injured through the use of the airport.

The majority finds that "not only must the parties have intended to benefit the public, but they also must have intended to compensate members of the public who are injured as a result of a breach." I find no support for the second conclusion. It is based not on the language of the contract or the legislative history, but merely on a relatively few state cases which, as outlined above, are not controlling. I am unwilling to create a cause of action based on such a thin thread. I would therefore affirm the judgment of the district court.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

Before BROWN, Chief Judge, WISDOM, GEWIN, THORNBERRY, COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, DYER, MORGAN, CLARK, RONEY, GEE and TJOFLAT, Circuit Judges.

BY THE COURT:

A member of the Court in active service having requested a poll on the application for rehearing en banc and a majority of the judges in active service having voted in favor of granting a rehearing en banc.

IT IS ORDERED that these causes shall be reheard by the Court en banc with oral argument on a date hereafter to be fixed. The Court will specify a briefing schedule for the filing of supplemental briefs.