538 F.2d 643
 George Henson MIREE et al., Plaintiffs-Appellants,
v.
UNITED STATES of America et al., Defendants-Appellees.
Judith Anita PHILLIPS, widow of David Emanuel Phillips,
deceased, Plaintiff-Appellant,
v.
UNITED STATES of America, Defendant-Third-Party Plaintiff-Appellee.
DeKALB COUNTY, GEORGIA, Defendant-Appellee,
v.
MACHINERY BUYERS CORP. et al., Third-Party Defendants-Appellees.
William Michael FIELDS, Plaintiff-Appellant,
v.
UNITED STATES of America, Defendant-Appellee,
DeKalb County, Georgia, et al., Defendants-Appellees.
FIREMAN'S FUND INSURANCE COMPANY, Plaintiff-Appellant,
v.
UNITED STATES of America, Defendant-Appellee,
DeKalb County, Georgia, et al., Defendants-Appellees.
Pearlie CHAISSON, Plaintiff-Appellee,
v.
SOUTHEAST MACHINERY, INC., Defendant and Third-Party
Plaintiff-Appellant,
v.
UNITED STATES of America et al., Third-Party Defendants-Appellees.
 Nos. 74-3670, 74-3822, 74-3864, 74-3870 and 74-3881.
 United States Court of Appeals,
Fifth Circuit.
 Aug. 25, 1976.
 
 Hugh M. Dorsey, Jr., Jule W. Felton, Jr., Atlanta, Ga., Gilbert E. Johnston, Alan W. Heldman, Birmingham, Ala., for plaintiffs-appellants in 74-3670.
 John W. Stokes, U. S. Atty., William D. Mallard, Jr., Asst. U. S. Atty., Atlanta, Ga., George M. Fleming, Trial Atty., U. S. Dept. of Justice, Morton Hollander, Ronald R. Glancz, Washington, D. C., for U. S. A.
 W. Meade Burns, Jr., F. Clay Bush, Atlanta, Ga., Wendell K. Willard, Decatur, Ga., for DeKalb County.
 J. Arthur Mozley, Atlanta, Ga., for S. E. Machinery, Machinery Buyers Corp. and Fireman's Fund Ins. Co.
 Baxter H. Finch, Atlanta, Ga., for defendants-appellees in 74-3670.
 Robert W. Patrick, Jr., Atlanta, Ga., Herbert S. Falk, Jr., Greensboro, N. C., for defendants-appellees in 74-3670 and Fields.
 A. Russell Blank, Atlanta, Ga., for plaintiff-appellant in 74-3822.
 Robert M. Travis, William Q. Bird, Atlanta, Ga., for plaintiff-appellant in 74-3864.
 Robert Stringer, Decatur, Ga., for Chaisson.
 Appeals from the United States District Court Northern District of Georgia.
 Before BROWN, Chief Judge, GEWIN, COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, DYER, MORGAN, CLARK, RONEY, GEE, TJOFLAT and HILL, Circuit Judges.*
 PER CURIAM:
 
 
 1
 The Court en banc adopts as its opinion Parts I, II, and IV of the majority panel opinion in this cause, 526 F.2d 679-686. The Court en banc adopts as its opinion the dissenting opinion of Judge Dyer, 526 F.2d 686-688 in lieu of Part III of the majority panel opinion. While not directly in point, the Court has reviewed the case of United States v. Orleans, --- U.S. ----, 96 S.Ct. 1971, 48 L.Ed.2d 390. The reasoning of the dissenting opinion, adopted here, is remarkably consistent with the policy considerations noted by the Chief Justice in Orleans.
 
 
 2
 Accordingly, the judgment of the district court is
 
 
 3
 AFFIRMED.
 
 
 4
 TJOFLAT, Circuit Judge (concurring).
 
 
 5
 I agree that, in general, government contracts, and especially those having to do with the airways, should be controlled by federal law. See generally Illinois v. Milwaukee, 406 U.S. 91, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972); United States v. Seckinger, 397 U.S. 203, 90 S.Ct. 880, 25 L.Ed.2d 224 (1970); Northwest Airlines v. Minnesota, 322 U.S. 292, 64 S.Ct. 950, 88 L.Ed. 1283 (1944); Kohr v. Allegheny Airlines, Inc., 504 F.2d 400 (7th Cir. 1974), cert. denied sub nom., Forth Corp. v. Allegheny Airlines, Inc., 421 U.S. 978, 95 S.Ct. 1979, 44 L.Ed.2d 470 (1975). See also Federal Aviation Act of 1958, § 1108(a), 49 U.S.C. § 1508(a) (1970). I also agree that the public was not an intended third-party beneficiary of the contract assurances mandated by 49 U.S.C. § 1110, now enacted at 49 U.S.C. § 1718 (1970). Consequently, I concur.
 
 
 6
 LEWIS R. MORGAN, Circuit Judge, with whom JOHN R. BROWN, Chief Judge, and GOLDBERG, AINSWORTH and GODBOLD, Circuit Judges, join (dissenting):
 
 
 7
 The court en banc adopts as its decision Parts I, II, and IV of the majority panel opinion, which held that under Georgia law plaintiffs could not recover against defendant DeKalb County under a theory of negligence,[1] of nuisance, or of waiver of immunity through the County's purchase of liability insurance. The majority en banc also adopts Judge Dyer's dissent in the original panel opinion in lieu of Part III of that same opinion. In Part III, the majority panel opinion held that under Georgia law plaintiffs could sue as third party beneficiaries to a contract between the Federal Aviation Administration (FAA) and DeKalb County. Through its adoption of Judge Dyer's dissent, however, the majority en banc holds that suit as third party beneficiaries is likewise unavailable to plaintiffs and that, accordingly, their entire action was properly dismissed.
 
 
 8
 DeKalb County entered into an agreement with the FAA whereby in return for a grant of money by that agency, it gave the FAA certain assurances, among which were its promises that it would operate the airport for the use and benefit of the public, maintain it in a safe and serviceable condition, and limit use of adjacent land so that it would not interfere with the safe use of the airport. Miree v. United States, 5 Cir., 526 F.2d 679 at 686, n.12. The majority panel opinion held that under Georgia law plaintiffs could sue as third party beneficiaries for the County's alleged breach of its contractual duties.[2] Judge Dyer's dissent, which the court en banc now adopts, argued that federal common law, not Georgia law, should control the interpretation of third party beneficiary rights under a contract entered into by the United States Government and other parties. We respectfully dissent.
 
 
 9
 I. Inapplicability of Federal Common Law.
 
 
 10
 After Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), in which the Supreme Court held that in diversity cases[3] state law generally shall apply, it became clear that federal general common law no longer existed. Yet, with the much publicized Clearfield Trust Co. v. United States,[4] 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1973), it became clear that federal common law, as opposed to federal general common law, still lived. In Clearfield, a check drawn on the United States Treasurer payable to a named government employee was stolen and forged and the Clearfield Trust Company paid the check over the forged endorsement. In determining that federal common law, not state law, applied, the Supreme Court held that rights and duties of the United States on commercial paper that it issues should not be controlled by local law. That is, "the issuance of commercial paper by the United States is on a vast scale and transactions in that paper . . . will commonly occur in several states. The application of state law . . . would subject the rights and duties of the United States to exceptional uncertainty. . . . The desirability of a uniform rule is plain." Id. at 367, 63 S.Ct. at 575. Hence, the rationale supporting the Clearfield decision is that when the rights and duties of the United States are to be determined, uniformity of result is desirable. Accord, United States v. Standard Oil, 332 U.S. 301, 67 S.Ct. 1604, 91 L.Ed. 2067 (1947) (indemnification of Government for injury to its soldier is matter of federal fiscal policy that demands uniform result).
 
 
 11
 It seems quite clear to us then that absent explicit Congressional command, federal common law should be chosen in a diversity case only when there exists an identifiable federal interest in the outcome of the particular case or in a consistent result in cases of its class. Such an interest is not involved in this case. Here, we have litigation between two non-federal parties over the rights of one as a third party beneficiary to a contract executed by the other. While the federal government was a party to this contract, it has no particular interest in the outcome of the third party beneficiary question in this diversity suit.[5] Such a question is a matter to be decided by the particular state's own contract law. Indeed, whether or not the plaintiffs could recover as third party beneficiaries is of no significance to the United States in that it affects no rights or liabilities of the United States[6] and involves no impact on a federal fiscal policy.[7]
 
 
 12
 We find our approach supported by analogous Supreme Court cases. In Bank of America National Trust & Savings Association v. Parnell, 352 U.S. 29, 77 S.Ct. 119, 1 L.Ed.2d 93 (1956), a diversity case in which the United States was not a party, the Supreme Court held that in litigation between two private parties over negotiation of federal bonds, state law controlled. The words of Justice Frankfurter are particularly appropriate for the present case:
 
 
 13
 The present litigation is purely between private parties and does not touch the rights and duties of the United States. The only possible interest of the United States in a situation like the one here . . . is that the floating of securities of the United States might somehow or other be adversely affected by the local rule of a particular State regarding the liability of the converter. This is far too speculative, far too remote a possibility to justify the application of a federal law to transactions essentially of local concern.
 
 
 14
 Id. at 33-34, 77 S.Ct. at 121. (Emphasis added.) Likewise, in Wallis v. Pan American Petroleum Corporation, 384 U.S. 63, 86 S.Ct. 1301, 16 L.Ed.2d 369 (1966), the Supreme Court held that state law applies to a case between two private parties involving the assignment of an oil and gas lease given by the United States through the Mineral Leasing Act for Acquired Lands. In rejecting the application of federal common law, the Court stated:
 
 
 15
 In deciding whether rules of federal common law should be fashioned, normally the guiding principle is that a significant conflict between some federal policy or interest and the use of state law in the premises must first be specifically shown. It is by no means enough that, as we may assume, Congress could under the Constitution readily enact a complete code of law governing transactions in federal mineral leases among private parties. Whether latent federal power should be exercised to displace state law is primarily a decision for Congress. Even where there is related federal legislation in an area, as is true in this instance, it must be remembered that 'Congress acts . . . against the background of the total corpus juris of the states . . .' Hart & Wechsler, The Federal Courts and the Federal System 435 (1953). Because we find no significant threat to any identifiable federal policy or interest, we do not press on to consider other questions relevant to invoking federal common law, such as the strength of the state interest in having its own rules govern . . . .
 
 
 16
 Finally, it is said that because the leases are issued by the United States and concern federal lands, there is a federal interest in having private disputes over them justly resolved. Apart from the highly abstract nature of this interest, there has been no showing that state law is not adequate to achieve it.
 
 
 17
 Id. at 68-71, 86 S.Ct. at 1304, 16 L.Ed.2d at 373-74 (emphasis added). We find the present case to be analogous to both Parnell and Wallis. Like Parnell and Wallis, this case involves litigation between private parties over a matter in which the federal government has been somewhat involved, but in which no issue of the rights and liability of the government is being litigated and in which no federal interest demanding a uniform disposition is involved.[8]
 
 
 18
 In addition to these Supreme Court precedents, we feel that there are several policy considerations that favor application of state law over federal common law in this case. First, there is the important consideration of comity between the state and federal governments deemed so important in Erie. As the Supreme Court has stated: "As respects the creation by the federal courts of common-law rights, it is perhaps needless to state that we are not in the free-wheeling days antedating Erie R. R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188. The instances where we have created federal common law are few and restricted." Wheeldin v. Wheeler, 373 U.S. 647, 651, 83 S.Ct. 1441, 1445, 10 L.Ed.2d 605, 611 (1963) (emphasis added) (citation omitted). Here there exists a ready-made body of Georgia law on contract law, a subject well-disposed to adjudication through state law.[9]
 
 
 19
 Second, we find the result in this case cruelly ironic in that through the application of federal common law, the majority preserves the County's immunity from suit by imposing a stricter test for third-party beneficiary standing than Georgia's own courts do. In view of the fact that the United States has enacted a complex scheme of federal aviation laws whose purpose is to promote air safety and that the Government in its contract with DeKalb County demanded assurances that the latter would maintain the airport in a safe condition, we cannot understand what federal purpose can possibly be served by conferring on DeKalb County greater immunity than its own state laws give it.
 
 
 20
 Finally, there is one other possible ramification of the case that could prove to be an unpleasant surprise for my brothers who join in the majority opinion: the expansion of federal jurisdiction. There was some concern that our holding in the original panel opinion expanded federal jurisdiction, that, carried to its logical conclusion, it would result in making a "federal case" out of a minor slip and fall accident at a county airport. The basis of that fear always seemed unclear, in that the present case is a diversity case, not a "federal question" case in which a particular holding could well expand federal jurisdiction.[10] Therefore, whether we had held that Georgia law did or did not render the County liable on a third party beneficiary theory, the case was nevertheless a diversity case whose particular holding could not possibly expand or contract federal jurisdiction. Through the majority's holding that federal common law controls the entire interpretation of any contract entered into by the United States, however, it is quite possible that federal jurisdiction has been expanded. That is, "though the matter remains undecided by the Supreme Court, the better view is that a case 'arising under' federal common law is a federal question case, and is within the original jurisdiction of the federal courts as such." C. Wright, Law Of Federal Courts 250 (2d ed. 1970). Since Mr. Wright's statement, the Supreme Court has held that claims founded on federal common law shall be construed as claims arising under the Constitution, laws or treaties of the United States, for purposes of federal question jurisdiction under 28 U.S.C. § 1331. Illinois v. City of Milwaukee, 406 U.S. 91, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972). Accordingly, it would seem that with this court's en banc decision there is now federal question jurisdiction over any claim made as a third party beneficiary to a contract involving the United States a result that gives a much broader jurisdictional base than the present diversity basis alone.
 
 
 21
 For the above reasons, we believe the original panel opinion applying Georgia law to the question should be affirmed.
 
 
 22
 II. Third Party Beneficiary Suits Under Federal Common Law.
 
 
 23
 While we do not believe that federal common law should apply in this case, we also dissent from the majority's holding that such federal law would preclude plaintiffs' suits as third party beneficiaries. Judge Dyer cites the Restatement (First) Of Contracts, § 145 (1932) and seven cases none of which derives from either the Supreme Court or this circuit for the proposition that members of the public can recover damages under a contract with the United States to which they are not a party only when the contract manifests an intention that they be so compensated. Miree v. United States, supra, at 686-87. We contend that this authority is not persuasive in that the Restatement, now forty-four years old, antedates most of the major development of the third party beneficiary doctrine and that the seven cases cited are inapplicable to the present case.[11] Two cases out of the Fifth and Ninth Circuits that are much closer to the present case support our argument that federal common law should favor plaintiffs' recovery. In Bossier Parish School Board v. Lemon, 370 F.2d 847 (5th Cir. 1967), this court held that black children who were not allowed to attend the Bossier, Louisiana public schools could sue as third party beneficiaries under a contract between the United States and the Bossier Parish school system. Specifically, the United States Department of Health, Education, and Welfare had administered grants of two million dollars to the Bossier Parish school system, for which the school system gave various promises in return, among them the assurance that children of parents stationed at Barksdale Air Force Base could attend the public schools; the black children discriminated against in Bossier were children of such parents. Because Bossier was brought as a federal question suit, it is clear that the panel was applying federal common law when it held that the assurances given by the defendant in return for the United States grants made permissible a third party beneficiary suit by plaintiffs.
 
 
 24
 In a case even closer factually to the present case, the Ninth Circuit held that plaintiff, an adjacent city to the defendant airport, had standing to sue as a third party beneficiary to grant agreements made between an airport and the FAA. City of Inglewood v. City of Los Angeles, 451 F.2d 948 (9th Cir. 1972). In that case, plaintiff, who alleged federal question grounds, sued for damages and injunctive relief arising from noise that resulted from operation of the Los Angeles International Airport. Reversing the district court in its holding that plaintiff could not sue as a third party beneficiary in that it was not an intended beneficiary of the grant agreement, the Ninth Circuit examined the legislative history of 49 U.S.C.A. § 1110(4) (now 49 U.S.C.A. § 1718(4)),[12] pursuant to which the grant agreement was executed, and found that flight safety was not the sole purpose of the section, but that the welfare of persons living close to airports was also to receive protection. The court stated:
 
 
 25
 If Los Angeles made the assurances required . . . in applying for various grant agreements, then Inglewood must certainly be included within the category of intended beneficiaries of those assurances. Congress had some purpose in enacting these two sections of Title 49. It is not to Los Angeles' benefit to be required to give the Secretary those assurances; nor are the assurances of any independent benefit to the Secretary. The Secretary merely receives them for the benefit of, and in the place of, the surrounding communities and residents of the area.
 
 
 26
 Id. at 956 (emphasis added). Of course, the facts in the present case do involve flight safety, as opposed to noise disturbance, but the Ninth Circuit's discussion in Inglewood makes it quite clear that such safety was the primary object sought by the grant assurances. Just as in Inglewood, in this case, it was not for the benefit of DeKalb County nor for the benefit of the FAA that the government required the County to promise that it would maintain the airport in safe operating condition. Obviously, the only parties that the assurance could possibly have benefited were those members of the flying public who used DeKalb-Peachtree Airport. Accordingly, we contend that under federal common law plaintiffs were the intended beneficiaries of the grant agreement and should have been allowed to so sue.
 
 
 27
 III. Conclusion.
 
 
 28
 In summary, we feel that regardless of which law should be applied in this case, the result reached here is clearly incorrect. We have in this case plaintiffs suing a fully insured County against whom a strong prima facie case of negligence and breach of contract have been made. Under our interpretation of Georgia law, the law which we believe to be applicable here, plaintiffs could sue as third party beneficiaries to the grant agreement between the United States and DeKalb County.[13] We feel that the same result should obtain under application of federal common law. Yet, the majority applies a federal common law narrower in its allowance of recovery than Georgia law, the forum that should have the greater interest in determining whether its county should be immune from suit. In the face of a contract provision enacted at the insistance of the United States that requires DeKalb County to maintain a safe airport and of an extensive scheme of federal aviation laws whose purpose is to encourage safe airport operations, we cannot understand what federal interest is served by overruling Georgia law to defeat an action by these plaintiffs. We respectfully dissent.
 
 JOHN R. BROWN, Chief Judge (dissenting):
 
 29
 I join in Judge Morgan's fine dissent. I have reservations about part I but these are not decisive of this case.
 
 
 30
 I emphasize that I believe federal, not state, law controls. This is an area in which there is a need for that consistency which can only be provided by uniform national standards a consistency, in short, which requires the application of federal construction of federal contracts. Like Judge Morgan, however, I believe that federal law not only does not preclude the plaintiffs below from recovering as third party beneficiaries but that federal law compels this result.
 
 
 31
 To assert that Congress, in enacting 49 U.S.C.A. § 1718(4), meant for contracts between the FAA and airports to benefit that countless multitude of taxpayers and land-locked citizens and to exclude those of the flying public including peripatetic Judges whose airborne safety is central to them is to say Congress was incongruous. Who else but the flying public with or without life tenure (which after all lasts for this life only) were they thinking of? The proof of the pudding, as this record indicates, is that the Federal Government, disturbed about the presence of garbage fed fowls, sought and obtained from the District Court an injunction against the continuance of this menace. In what name was this remedy invoked in the name of the safety of the air traveling public. If the Government could, should, and did protect them from this hazard to their very temporal existence, how in the name of legalese can we conclude that the contract did not mean that fliers or unfortunately, their successors, assigns, widows and orphans while protected in a general sense, were not to be entitled to the only redress an aggrieved survivor has for such a contractual dereliction?
 
 
 
 *
 Because of illness Judge Wisdom did not participate in the hearing or in the consideration of this case. Judge Thornberry was a member of the En Banc court that heard oral arguments but due to illness did not participate in this decision
 
 
 [1]
 While plaintiffs presented abundant evidence to make out a prima facie case of negligence against defendant in the operation of the DeKalb-Peachtree Airport, an analysis of applicable Georgia case law indicated that DeKalb County was immune from suit under a theory of negligence
 
 
 [2]
 Specifically, through the County's continued operation of the county garbage dump, which lay adjacent to the airport, large numbers of birds swarmed over the airport and created allegedly hazardous conditions. It was the ingestion of a large number of these birds into the air intake system of the airplane's engine that allegedly caused the crash in question
 
 
 [3]
 Justice Brandeis' exact words were: "Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state . . . There is no federal general common law." 304 U.S. at 78, 58 S.Ct. at 822
 
 
 [4]
 Actually, on the same day that Erie was announced, Justice Brandeis held that "whether the water of an interstate stream must be apportioned between the two States is a question of 'federal common law' upon which neither the statutes nor the decisions of either State can be conclusive." Hinderlider v. La Plata River & Cherry Creek Ditch Co., 304 U.S. 92, 110, 58 S.Ct. 803, 811, 82 L.Ed. 1202 (1938)
 
 
 [5]
 To the extent that the United States would have any interest in the outcome, its interest would favor recovery by the plaintiffs, in that the United States required the County to promise to maintain safe conditions at the airport. Unless the United States intended this to be an empty promise by the County, one would assume that it would favor a result encouraging the keeping of this promise. See Section II, infra
 
 
 [6]
 Clearfield Trust Co. v. United States, supra
 
 
 [7]
 United States v. Standard Oil, supra
 
 
 [8]
 Indeed, the three cases cited by Judge Dyer for the proposition that federal common law should apply involved situations in which the United States was either seeking indemnity or was itself suing for damages on a contract made between it and another party. See Miree v. United States, supra, at 686. Hence, in these cases the United States did have an identifiable interest in the outcome of the case that demanded an application of federal common law
 
 
 [9]
 We note that in several instances, the Supreme Court has applied state law in a suit brought in federal court for the reason that the matter is one of particular state concern and one on which the state has already developed a large body of law. For example, in United States v. Yazell, 382 U.S. 341, 86 S.Ct. 500, 15 L.Ed.2d 404 (1966), a suit brought by the United States to obtain payment of a loan made by the Small Business Administration, the Supreme Court applied state law on the issue of the female defendant's disability to contract, noting that the state had developed a body of law on the issue in question and that, absent an overriding federal interest, the state's interest in the matter should be respected. Id. at 352, 86 S.Ct. at 507, 15 L.Ed.2d at 410. Although the jurisdictional basis for it was the existence of a federal question, DeSylva v. Ballentine, 351 U.S. 570, 580-81, 76 S.Ct. 974, 979-80, 100 L.Ed. 1415, 1427-28 (1956), is in accord (state law, not federal law, determines the meaning of "children" under § 24 of the Copyright Act of 1947). We feel that the interest of the state in applying its own law governing third party beneficiary rights is equally compelling
 
 
 [10]
 E. g., Bivens v. Six Unknown Named Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971)
 
 
 [11]
 None of these cases seem particularly applicable to the facts of this case. In two of the cases West v. Morrison-Knudsen Company, 451 F.2d 493 (9th Cir. 1971) and Hensley v. United States, 279 F.Supp. 548 (D.Mont.1968) the courts were utilizing Montana third-party beneficiary law. Brotherton v. Merritt-Chapman and Scott Corp., 213 F.2d 477 (2d Cir. 1954), does not clearly state whether it is applying federal or state law, but, in any event, that case involved an incidental beneficiary. Mahler v. United States, 306 F.2d 713 (3rd Cir. 1962), was a tort case, not a third party beneficiary action. Two cases that disallowed third party suits Johnson v. Redevelopment Agency, 317 F.2d 872 (9th Cir. 1963) and Sayre v. United States, 282 F.Supp. 175 (N.D.Ohio 1967) were limited to the facts of their case, facts which included a comprehensive federal statutory scheme on redevelopment that precluded such suits. Finally, Housing Corp. of America v. United States, 468 F.2d 922, 199 Ct.Cl. 705 (U.S.Ct.Cl.1972), denied a third party beneficiary action because the United States had fulfilled its duty under the contract and because a section of the contract explicitly prohibited third party beneficiary actions
 
 
 [12]
 That section reads:
 As a condition precedent to his approval of an airport development project under this subchapter, the Secretary shall receive assurances in writing, satisfactory to him, that
 (4) appropriate action . . . has been or will be taken, to the extent reasonable, to restrict the use of land adjacent to or in the immediate vicinity of the airport to activities and purposes compatible with normal airport operations, including landing and takeoff of aircraft.
 
 
 [13]
 Hancock County v. Williams, 230 Ga. 723, 198 S.E.2d 659 (1973)