**BAKERSFIELD CITY SCHOOL DISTRICT OF KERN COUNTY,**
Plaintiff-Appellant,

v.

Ernest **BOYER** et al.,
Defendants-Appellees.

**BAKERSFIELD CITY SCHOOL DISTRICT, Plaintiff-Appellant,**

v.

Ernest **BOYER** et al.,
Defendants-Appellees.

Nos. 77–2625, 78–1459.

United States Court of Appeals,
Ninth Circuit.

Nov. 20, 1979.

Rehearing Denied in No. 77–2625 Jan. 18, 1980.

Ralph B. Jordan, Bakersfield, Cal., on brief; John E. Loomis, Staniford, Harris, Loomis & Home, Fresno, Cal., for plaintiff-appellant.

Elisa B. Vela, Atty., Dept. of Justice, Washington, D. C., for defendants-appellees.

Before DUNIWAY and ELY, Circuit Judges, and PORT,* District Judge.

DUNIWAY, Circuit Judge:

In No. 77–2625, the plaintiff Bakersfield City School District appeals from a district court judgment dismissing its action for failure to exhaust administrative remedies in an administrative proceeding under Title VI of the Civil Rights Act of 1964. In No. 78–1459, the District appeals from a post judgment Protective Order. We affirm both the judgment and the order.

I. *Facts.*

In June, 1975, administrative proceedings were begun by the Department of Health, Education and Welfare's Office of Civil

---

* The Honorable Edmund Port, Senior United States District Judge for the Northern District of New York, sitting by designation.

Rights (the Department) against the District. The Department alleged that the District was violating Title VI of the Civil Rights Act of 1964. The Department's position was that the substantially disproportionate racial composition of the student body in some of the District's schools supported an inference that the District was employing discriminatory practices and was not implementing available programs effectively. The Department concluded that voluntary compliance with Title VI could not be achieved. The District was notified on June 2, 1975, that payment of federal funds not yet approved was "deferred" pending the outcome of the proceedings. The District had applied for approximately $220,000 from the Department, but it never received those funds.

On June 3, the District received from the Department a "Notice of Opportunity for Hearing." The District responded to the Notice on June 26, denying the charges and requesting a hearing. July 28 was set as the hearing date and a prehearing conference was scheduled immediately before the hearing. At the conference, the administrative law judge (AL Judge) determined that the District's inadequate responses to the Department's requests disabled the Department from presenting its case at that time. The hearing was ordered "continued and rescheduled to begin on October 6, 1975." There were no objections to the continuance. The Department called its first witness on October 6, 1975, and continued to present testimony through December 18, 1975. The District then began its presentation of testimony and completed it in April 1976.

Following the hearing, the AL Judge, the District and the Department began the process of correcting the official transcript of the hearing. Early in the proceedings, the District had decided that the reporter's transcript of the proceeding was inaccurate. It objected to the method of transcription with no success. Concern about the accuracy of the transcript led it to tape-record 109 of the 111 sessions held. On the basis of the tapes, it claimed that the transcript contained over 9,000 "serious mistakes."

Applying the standard of 45 C.F.R. § 81.91, the AL Judge limited corrections to those involving "matters of substance" and required that proposed corrections be submitted by way of errata sheets. By January 27, 1977, all objections had been heard and 225 pages of transcript corrections had been authorized by the AL Judge, to become effective February 4, 1977. The Department filed proposed findings of fact and conclusions of law on March 7, 1977. The District was allowed until March 28, 1977 to file.

However, on March 24, 1977, the District filed its Complaint in this action for injunctive and declaratory relief and relief in the nature of mandamus, naming as defendants the Department and the AL Judge, and obtained, *ex parte,* a temporary restraining order enjoining the use of the transcript, tolling any time limits in the administrative hearings and preventing the further dispersal of deferred funds. The order effectively removed the deadline for the filing of the District's final brief in the administrative proceedings and prevented the AL Judge from rendering a final decision. The complaint requested that the Department be compelled to pay monies unlawfully deferred and to prepare an accurate transcript of the proceedings. The Department and the AL Judge moved for summary judgment and dismissal of the complaint.

On May 16, 1977, the district court entered its order granting the motion to dismiss, finding that the District had failed to exhaust administrative remedies and that its objections, including those based upon errors in the transcript, could be raised in review proceedings. Judgment was entered dismissing the action on May 20, 1977. No. 77–2625 is the District's appeal.

On November 1, 1977, on the District's motion, the district court entered a protective order to preserve the transcript and the District's tape recordings for "future review in any administrative or judicial processes." The order did not completely prevent the use of the transcript in its uncorrected form. Feeling that the order

was too narrow, the District appeals in No. 78–1459. The Department has not cross-appealed.

The Department tells us that there have been further proceedings, as follows: The AL Judge has rendered a decision in the administrative proceeding, finding the District in violation of Title VI. The District has filed objections with the Reviewing Authority (Civil Rights) contesting the findings and conclusions of the AL Judge on the grounds, *inter alia*, that the official transcript is defective. After the AL Judge's finding of noncompliance, the Department imposed a new deferral on the District's applications for federal financial assistance.

## II. *Judicial Intervention in Uncompleted Administrative Proceedings.*

■ The district court dismissed the District's action because the District had failed to exhaust its administrative remedies. The District argues that it should be relieved of the exhaustion requirement on three theories: denial of due process in the conduct of the administrative proceedings, rendering the proceedings void, denial of due process in the preparation of a transcript of the proceedings, and *res judicata* as a bar to the administrative proceedings. We reject all three theories.

## A. *Claimed Denial of Due Process in the Proceedings.*

Title VI of the Civil Rights Act of 1964, § 601, 42 U.S.C. § 2000d, prohibits discrimination on the basis of "race, color, or national origin" in "any program or activity receiving Federal financial assistance." Comprehensive procedural requirements must be met before Federal financial assistance can be terminated for noncompliance with § 601. As it applies to this case, 42 U.S.C. § 2000d–1 requires that, before terminating federal assistance, the Department must have: (1) advised the District of its failure to comply with § 601; (2) determined that voluntary compliance cannot be secured; and (3) made an express finding on the record, after an opportunity for a hearing, that the District is not in compliance with § 601. Termination does not become effective until 30 days after the Secretary of the Department files a full written report with the relevant Congressional committees detailing the reasons for the termination.

After these procedures are completed, a person aggrieved by the agency action may obtain judicial review in the United States Court of Appeals under the Administrative Procedure Act. 42 U.S.C. § 2000d–2. The agency or the court may postpone or stay agency action pending such judicial review. 5 U.S.C. § 705.

The Department has adopted **regulations** implementing the requirements of § 2000d–1. These provide for an internal appeals process. The initial decision is by an administrative law judge who presides over the administrative hearing. His decision is reviewable by the Department's Reviewing Authority (Civil Rights) and by the Secretary of the Department. 45 C.F.R. §§ 81.-104, 81.106. The decision of the Secretary or, if no exceptions to the decision or requests for review are filed, the decision of the administrative law judge, or the Reviewing Authority, is a final decision within the meaning of 5 U.S.C. § 704, reviewable in the court of appeals under 42 U.S.C. § 2000d–2.

In addition to the provisions of § 2000d–1, allowing the termination of or refusal to grant or to continue assistance, 42 U.S.C. § 2000d–5 (the Fountain Amendment) allows the Department to defer the approval of federal funds not yet authorized for new programs or activities on the ground of noncompliance with Title VI, pending administrative proceedings to determine compliance. The Fountain Amendment provides that such deferral cannot exceed 60 days unless within that time the recipient is given notice of an opportunity for a hearing. Such hearing must be held within 60 days of the notice unless the parties extend the time by mutual consent. No provision limits the time during which deferral may

continue while the hearing is being held,[1] but the deferral may not continue for more than 30 days after the close of the hearing, absent an express finding on the record of noncompliance with Title VI. No provision limits the permissible length of a deferral after a decision of noncompliance has been entered.

The District argues that 20 U.S.C. § 1232i(b) (the Eshleman Amendment), rather than the Fountain Amendment, controls this case. The Eshleman Amendment requires (1) at least 30 days prior written notice of a deferral, (2) the opportunity for a hearing before an administrative law judge within a 60 day period from commencement of a deferral, and (3) the conclusion of the hearing and the rendering of a decision on the merits by the administrative law judge within 90 days of the commencement of the hearing, subject to an extension of 60 days by the administrative law judge. Thus the maximum period of deferral, from its commencement to decision of the administrative law judge, is 210 days. The amendment states that these requirements are included in the agency's "right of due process of law." The amendment became effective on November 11, 1976, 30 days after its enactment. *See* Pub.L. 94–482, §§ 407, 408, 532, 90 Stat. 2232, 2233, 2241.

In our case, the taking of testimony was completed in April, 1976, and the AL Judge was hearing and gradually deciding the District's 9,000 objections to the transcript when the Eshleman Amendment became effective. It seems to us that there is no sensible way in which the amendment can be applied to this case, and we do not think that Congress intended that it be so applied. The validity of the Department's June 1975 deferral is controlled by the law as it existed before the enactment of the Eshleman Amendment. None of the cases cited by the District in support of its claim that the Eshleman Amendment applies is in point. And the District did not assert, during the

administrative proceeding, that the amendment applies.

The District claims that the Department failed to comply with the provisions of the Fountain Amendment by initiating the administrative proceedings on October 6, 1975, 94 days after the notice of an opportunity for a hearing, without the consent of the District, thus violating the District's right to due process, and that the length of the proceedings after they had begun also violated due process, thus rendering the proceedings void.

We consider first the claimed violation of the Fountain Amendment. We conclude that the District's argument misconceives the effect of that amendment. It does not deal with or affect the validity of the hearing conducted pursuant to § 2000d–1. That hearing is for the purpose of deciding whether or not the District is complying with the Civil Rights Act. If it is, then the government cannot terminate ongoing assistance or refuse to grant or continue assistance. If the District is not complying, then the government can—indeed, it must—terminate ongoing assistance and refuse to grant or continue assistance. That is the issue which is to be decided at the hearing. The decision will affect deferral, because, if compliance is found, deferral must cease within 30 days, and if noncompliance is found, deferral may continue. But the AL Judge, at the hearing, does not decide whether deferral is or is not permitted. He is not conducting a hearing under § 2000d–5.

Section 2000d–5 tells the Secretary how he must proceed if he wishes to defer considering new programs or making grants for them. Its purpose is to limit deferral while the question of compliance or noncompliance is being decided, by conditioning deferral upon certain time limits in conducting a hearing under § 2000d–1. *See Board of Public Instruction of Palm Beach, supra,* n. 1, 413 F.2d at 1203. If those limits are not met, deferral must cease. But that

---

1. Thus the dictum in *Board of Public Instruction of Palm Beach Co., Fla. v. Cohen,* 5 Cir., 1969, 413 F.2d 1201, that "It [the Fountain Amendment] guarantees that no deferral can live longer than ninety days . . . ." (p. 1203) is plainly wrong.

does not mean that the hearing must cease, or that it is rendered void. The hearing can proceed to a conclusion whether deferral continues or does not continue. Thus the question of whether there shall be a deferral, and if so for low long, is not decided by the AL Judge, although the ultimate answer to it flows from the AL Judge's performance in meeting the § 2000d–1 time limits. It does not follow that his failure to meet those limits deprives the District of due process.

■ The question of due process, then, is not answered by the claimed violation of the Fountain Amendment. Rather, the only remotely arguable question is presented by the second of the District's claims, namely, that the length of the hearing has denied it due process. We have no difficulty with that argument. The essence of due process is notice and a fair hearing. The things of which the District complains—delay to complete necessary discovery, lengthy presentation of evidence, and the need to decide procedural questions of some difficulty as they arise—are all commonplace in important litigation, whether in a court of law or in an administrative proceeding. Except in extreme cases, they are not grounds for saying that due process is being denied. Nothing in the briefs or the records before us suggests, much less demonstrates, that the length of the proceedings is a product of bad faith or improprieties on the part of the Department or the AL Judge. Nothing supports the injection of the courts into the administrative proceeding before it is completed, or excuses the District from following the procedures established by the statutes and the regulations.

The district court correctly applied "the long-settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." Brandeis, J., in *Myers v. Bethlehem Shipbuilding Corp.,* 1938, 303 U.S. 41, 50–51, 58 S.Ct. 459, 463, 82 L.Ed. 638. Judicial intervention in uncompleted administrative proceedings, absent a statutory mandate, is strongly disfavored. *See Whitney National Bank v. Bank of New Orleans,* 1965, 379 U.S. 411, 422, 85 S.Ct. 551, 13 L.Ed.2d 386.

■ The mere allegation that the administrative proceeding from which judicial relief is sought is void is insufficient to compel judicial intervention prior to the exhaustion of administrative remedies. *Winterberger v. General Teamsters Auto Truck Drivers and Helpers Local Union 162,* 9 Cir., 1977, 558 F.2d 923, 925. Judicial intervention is appropriate in such a case only when there is a clear showing of irreparable injury, and time and expenses due to litigation are not enough, *Renegotiation Board v. Bannercraft Clothing Company,* 1974, 415 U.S. 1, 24, 94 S.Ct. 1028, 39 L.Ed.2d 123; *Myers, supra,* 303 U.S. 51–52, 58 S.Ct. 459.

The District claims that because it asserts a violation of its constitutional rights, it is entitled to immediate judicial intervention prior to exhaustion of any available administrative remedies. As the Supreme Court stated in *Yakus v. United States,* 1944, 321 U.S. 414, 435, 64 S.Ct. 660, 672, 88 L.Ed. 834:

> Only if we could say in advance of resort to the statutory procedure that it is incapable of affording due process to petitioners could we conclude that they have shown any legal excuse for their failure to resort to it or that their constitutional rights have been or will be infringed.

We certainly cannot say that here.

The district court correctly required exhaustion of the District's administrative remedies in relation to the hearing.

### B. *Preparation of the Transcript.*

The District asserts as an additional due process violation that the existence of alleged error in the transcript of the administrative proceedings will prevent adequate judicial review of a decision of the AL Judge. The District asks that the administrative proceedings be enjoined pending the preparation of an accurate transcript. In making its claim, the District does not assert that the AL Judge failed to comply

with the governing regulation for preparation and correction of the transcript, 45 C.F.R. § 81.91, which provides:

> The Department will designate the official reporter for all hearings. The official transcripts of testimony taken, together with any exhibits, briefs, or memoranda of law filed therewith shall be filed with the Department. . . . Upon notice to all parties, the presiding officer may authorize corrections to the transcript which involve matters of substance.

During the corrections period, the AL Judge repeatedly asserted the foregoing standard. Both parties had notice of the corrections period. He urged the parties to stipulate to corrections whenever possible, and required proposed corrections to be presented in the errata sheet format traditionally used for Title VI administrative hearings.

■ The District's objections to the transcript and to the transcript correction process can be raised at every stage of the administrative process, and, in fact, have been raised in the District's appeal from the AL Judge's finding of noncompliance with Title VI before the Reviewing Authority. There is nothing unique about the reviewability of transcript errors that would justify judicial intervention prior to the exhaustion of administrative remedies, even should such errors rise to the level of a due process violation. The District alleges no obvious failure to comply with the relevant statute, nor does it allege any jurisdictional defect.

The district court correctly ruled that the District should exhaust its administrative remedies in relation to the transcript.

### C. Res Judicata Claim.

■ As a third basis of exception to the exhaustion principle, the District claims that a prior state superior court judgment entered in an action brought by the State of California against the District in 1969 bars the current administrative proceedings on a theory of res judicata. The Department was not a party to the state court action, but the District claims that it was aware of the action and could have intervened had it desired to do so. According to the District, the state court found that the District had not violated any "Federal or State Constitutional or statutory law relating to segregation of (or discrimination against) school children in [its] assignment of children to schools." Brief for Appellant at 23. Whatever the merits of this contention, the District did not raise it until after the district court had rendered its decision of dismissal; therefore, that issue is not properly before us. See McCaffrey v. Diversified Land Co., Inc., 9 Cir., 1977, 564 F.2d 1241, 1243–1244, citing Thomason v. Klinger, 9 Cir., 1965, 349 F.2d 940.

### III. District Court Jurisdiction to Award Payment of Deferred Funds.

The District asks that this case be remanded to the district court for a determination of the validity of the 18 month deferral of funds, for an injunction to prevent any subsequent unlawful deferral, and for an order requiring payment to the District of funds improperly deferred. The District claims that but for the Department's improper deferral, it would have received $220,000 in federal funds applied for in fiscal year 1975.

■ In its initial consideration of this question, the district court found that it lacked jurisdiction to provide the relief requested because the District had failed to exhaust its administrative remedies. We agree that the district court lacks jurisdiction to grant the relief requested with respect to the deferral, but for a different reason.

Both the District and the Department agree that the validity of the deferral is not an issue cognizable by the AL Judge. (See our discussion of this question in part II, A, pp. 624–626, supra.) The propriety of the deferral will remain an issue regardless of the outcome of the administrative proceedings. The validity of the deferral is a question that was appropriate for review when this action was filed. The District claims that the actions of the Department

were limited by statute and that the lengthy deferral was an action ultra vires, obstructing the Congressional purpose embodied in the legislation involved, and was also an unconstitutional act. *See State of Washington v. Udall,* 9 Cir., 1969, 417 F.2d 1310, 1314.

The obstacle that now bars the way to the relief sought is that the specific funds in question have long since been disbursed to other applicants or have reverted back to the Treasury and are no longer available for payment to the District as they were when the proceedings began in June of 1975. The district court cannot order the Department to pay out funds that it does not have, much less order the Department to obtain the funds from the Treasury or order the Treasury to pay the funds to the Department or to the District. At this stage, if the District has a claim to the deferred funds at all, that claim is now one for money damages to the District caused by the Department's failure to comply with § 2000d–5.

Jurisdiction of such a claim does not lie in the district court; it lies exclusively in the court of claims under the Tucker Act because the claim exceeds $10,000. 28 U.S.C. §§ 1346(a)(2), 1491. To permit this action to proceed in the district court would be to undermine the court of claims' jurisdiction by permitting the district court to grant relief in excess of the jurisdictional limits of the Tucker Act. *See Mathis v. Laird,* 9 Cir., 1973, 483 F.2d 943.

The District cites the cases of *Robinson v. Vollert,* S.D.Tex., 1976, 411 F.Supp. 461, and *Kelley v. Metropolitan County Board of Education, Tennessee,* M.D.Tenn., 1973, 372 F.Supp. 540, to support its argument that the relief requested is available from the district court. Neither case so holds. In *Robinson,* the court recognized, at p. 478, that it could not command the disbursement of funds from the Treasury. In *Kelley,* in an earlier decision in the same case, 372 F.Supp. 528, the court pointed out, at p. 536, that the suit was not one to compel the disbursement of funds. In neither case was the Tucker Act even mentioned.

■ The district court cannot, when the basis for its jurisdiction is 28 U.S.C. § 1346(a)(2) (the Tucker Act), grant injunctive relief to compel compliance with a statute. *See Lee v. Thornton,* 1975, 420 U.S. 139, 95 S.Ct. 853, 43 L.Ed.2d 85. However, 28 U.S.C. § 1361 confers jurisdiction on the district court to issue a writ of mandamus for that purpose, and the District asks for such a writ.

■ Nevertheless, because the funds in question have been disbursed or have reverted to the treasury, the writ cannot issue, assuming that there has been a failure to comply with the Fountain Amendment. This is because the doctrine of sovereign immunity prevents the district court from ordering payment of funds which are no longer in existence in an action against a federal officer. To grant such relief would be to infringe directly upon the immunity of the sovereign without its consent.

■ Moreover, it is firmly established that, where the real effort of the complaining party is to obtain money from the federal government, the exclusive jurisdiction of the court of claims over non-tort claims exceeding $10,000 cannot be evaded or avoided by framing a district court complaint to appear to seek only injunctive, mandatory or declaratory relief against government officials or the government itself. *See Sherar v. Harless,* 9 Cir., 1977, 561 F.2d 791, 793–794; *Hoopa Valley Tribe v. United States,* Ct.Cl., 1979, 596 F.2d 435, 436, and cases there cited. Thus the damage remedy under the Tucker Act is the only remedy now available to the District with respect to the original deferral.

A decision in the administrative proceeding has been entered by the AL Judge, finding violation of the Civil Rights Act, and a new deferral has been instituted. Once there is such a decision there are no statutory limitations on the imposition of a deferral. 42 U.S.C. § 2000d–5; 20 U.S.C. § 1232i(b). Therefore, to entertain an action which seeks an injunction against the present deferral or a writ of mandamus requiring statutory compliance with respect

to the present deferral could serve no purpose.

IV. *Sufficiency of Protective Order.*

In light of our conclusions that the District has failed to exhaust administrative remedies available to it, and that any alleged errors in the transcript may be raised in the administrative and subsequent appellate proceedings, we find that the protective order issued by the district court on November 1, 1977, designed to preserve the transcript and the tape recordings of the proceedings for "future review in any administrative or judicial processes" is adequate to insure effective review.

In No. 77–2625, the judgment is affirmed.

In No. 78–1459, the order is affirmed.