S. J. GROVES & SONS COMPANY, a corporation, Plaintiff,

v.

The UNITED STATES of America; Cecil V. Andrus, Secretary of the Interior; R. Keith Higginson, Commissioner of the Bureau of Reclamation; Robert B. Jansen, Assistant Commissioner of Engineering and Research for the Bureau of Reclamation; and Donald J. Duck, Deputy Assistant Commissioner of Engineering and Research for the Bureau of Reclamation, Defendants.

Civ. A. No. 79–K–125.

United States District Court, D. Colorado.

Aug. 8, 1980.

Donald E. Phillipson, Davis, Graham & Stubbs, Denver, Colo., Theodore T. Davis, Minneapolis, Minn., for plaintiff.

Richard A. Jost, Asst. U. S. Atty., Denver, Colo., for defendants.

## ORDER

KANE, District Judge.

This action by S. J. Groves & Sons Company against the United States Government and officers of the Department of Interior and Bureau of Reclamation involves a dispute regarding a government contract between Groves and the United States to construct the Current Creek Pipeline, Currant Creek Dam, and other features of the Bonneville Unit, Central Utah Project. Contract No. 14–06–D–7566, dated July 15, 1974, was bid, executed, and administered pursuant to the Federal Property and Administrative Services Act, 41 U.S.C. §§ 5 and 252. Plaintiff alleges that the defendant officers exceeded their statutory and contractual authority by directing corrective construction because testing in March, 1977 concluded that the pipe was faulty.

Plaintiff contends that the dispute, a matter of contract interpretation, arises under federal law and invokes jurisdiction under 28 U.S.C. § 1331(a) (federal question jurisdiction) and § 1361 (mandamus), and the Administrative Procedures Act, 5 U.S.C. §§ 701–706. Defendants move to dismiss, or in the alternative for summary judgment, on the grounds of lack of subject matter jurisdiction, failure to state a claim upon which relief can be granted, and failure to exhaust administrative remedies. Defendants assert that jurisdiction does not lie under § 1331 and that this dispute, being one grounded in contract and involving a controversy exceeding $10,000, is exclusively within the jurisdiction of the Court of Claims pursuant to 28 U.S.C. §§ 1346(a)(2) and 1491. The district court has concurrent jurisdiction of contract disputes involving less than $10,000. 28 U.S.C. § 1346(a)(2).

I agree that I do not have subject matter jurisdiction of this dispute and therefore dismiss the complaint. However, because of the perimeters of jurisdiction under § 1331 for purposes of judicial review of administrative actions are undefined and in

dispute among the circuits,[1] and because the complaint was not drafted as merely a claim for damages under a contract, thus not fitting neatly into Court of Claims jurisdiction, I will attempt to clarify the problem and bring my reasoning into focus.

## I.

The pertinent facts follow: The pipeline was completed and delivered to the government in the fall of 1976. The government did not accept the pipeline as a finished project. On March 28, 1977, Groves filled the pipeline pursuant to Bureau directives and the contract. At this time the pipeline was found to be defective. Observation, testing, and consultation with technical experts continued from March, 1977, to March, 1978, to determine the cause of the failure. On March 14, 1978, Groves advised the Bureau in a detailed presentation that the failure was attributable to incorrect design, excessive ground water, landslides, and changed conditions after completion of the pipeline. The Bureau nonetheless directed Groves to make corrections beginning in 1978. Groves performed corrective construction several times during this period until the third filling on November 22, 1978, resulted in severe leakage and further corrections were aborted.

In response to Groves letter of December 5, 1978, requesting a determination of responsibility, the Bureau, in a letter dated January 5, 1979, stated that Groves was responsible for replacement or repair and directed further construction. On February 23, 1978, the contracting officer, defendant Robert B. Jansen, issued his findings of fact and directed Groves to proceed immediately with corrective measures. The findings concluded that faulty construction and laying of the pipeline resulted in the failure of the pipeline. On March 23, 1979, Groves filed its notice of appeal which was referred by Interior to the Board of Contract Appeals. Groves never filed a formal appeal

although it requested four extensions of time. Groves then filed this action in district court on February 7, 1979.

In its five claims for relief Groves seeks to prevent the Bureau from directing plaintiff to replace or repair the pipeline and from declaring plaintiff in breach of the contract for failure to perform the work, and declarations that the directives are outside the terms of the contract and its disputes clause, that no further work is required under the contract or the maintenance warranty of three years and that reimbursement on the basis of reasonable costs plus overhead and profit be awarded plaintiff for all work performed to correct or test the cause of the failure in the pipeline after March 28, 1977, to present.

## II

Groves invokes jurisdiction under 28 U.S.C. § 1331 and the Administrative Procedures Act, 5 U.S.C. §§ 701–706, and seeks determination that the Bureau actions are *ultra vires.* The Administrative Procedures Act alone does not create an independent basis of jurisdiction. "[T]he APA does not afford an implied grant of subject matter jurisdiction permitting federal judicial "review of agency action." *Califano v. Sanders,* 430 U.S. 99, 107, 97 S.Ct. 980, 985, 51 L.Ed.2d 792 (1977). *Accord Fry Bros. Corp. v. Department of Housing,* 614 F.2d 732 (10th Cir. 1980). Federal question jurisdiction under § 1331 presents several problems as well.

In foreclosing the APA as a basis for jurisdiction, the Supreme Court in *Sanders* relied on the 1976 amendments to § 1331 which removed the amount in controversy requirement for suits against the United States. The Supreme Court concluded that the obvious result of the amendments was that § 1331 provided jurisdiction to review federal agency action "subject only to preclusion-of-review statutes created or re-

---

1. *E. g., compare Watson v. Blumenthal,* 586 F.2d 925 (2nd Cir. 1978), *with Jaffee v. United States,* 592 F.2d 712 (3d Cir.), *cert. denied,* 441 U.S. 961, 99 S.Ct. 2406, 60 L.Ed.2d 1066 (1979).

tained by Congress . . . ." *Califano v. Sanders*, 430 U.S. at 105, 97 S.Ct. at 984.[2] At first blush, absent a law precluding judicial review, I could consider an APA claim pursuant to general federal question jurisdiction provided by § 1331. *See Kennecott Copper Corp. v. Costle*, 572 F.2d 1349, 1356 (9th Cir. 1978). However, the doctrine of sovereign immunity presents an insurmountable obstacle to jurisdiction which I will first address because it is the basis for plaintiff's invocation of § 1331.

It is fundamental that the United States may not be sued without its consent, *United States v. Testan*, 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976), *Stubbs v. United States*, 620 F.2d 775 (10th Cir. 1980), and that consent must be clearly stated. *United States v. King*, 395 U.S. 1, 4, 89 S.Ct. 1501, 1502, 23 L.Ed.2d 52 (1969). Section 1331 itself is not a general waiver of sovereign immunity. Plaintiff asserts, however, that section 702 of the APA constitutes a waiver of sovereign immunity as a defense to § 1331 jurisdiction. The circuits are in considerable dispute over the scope and effect of the amendments in 1976 which both removed the sovereign immunity defense in APA non-monetary actions against the United States, and which eliminated the

jurisdictional amount in federal question actions against the United States. 5 U.S.C. § 702, 28 U.S.C. § 1331.[3]

Although recognizing that the status of sovereign immunity under § 1331 is unclear, the Second Circuit relied on legislative history and congressional intent in *Watson v. Blumenthal*, 586 F.2d 925 (2d Cir. 1978), to conclude that "the amendments [to the APA] do not provide for jurisdiction but only make it clear that sovereign immunity will not be a defense in actions *in which jurisdiction does exist*; there is . . . no jurisdiction under § 1331, because of sovereign immunity, *a defense that the amendments did not affect.*" *Id.* at 932 (emphasis added). The Third Circuit reached an opposite conclusion in *Jaffee v. United States*, 592 F.2d 712 (3d Cir.), *cert. denied*, 441 U.S. 961, 99 S.Ct. 2406, 60 L.Ed.2d 1066 (1979), by finding that "Congress amended section 702 with a specific purpose of waiving sovereign immunity in equitable actions brought under section 1331." *Id.* at 718. Stating that it was "constrained to disagree with the Second Circuit," the *Jaffee* court held that "section 702, when it applies, waives sovereign immunity in 'nonstatutory' review of agency action under section 1331." *Id.*[4]

---

**2.** One of the exceptions to reviewability under the APA, 5 U.S.C. § 701(a)(1) provides that "[t]his chapter applies . . . except to the extent that—(1) statutes preclude judicial review . . . ."

**3.** After amendment in 1976, 5 U.S.C. § 702 now reads:

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States: *Provided*, That any mandatory or injunctive decree shall specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance. Nothing here in (1) affects other limitations on judicial

review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.

28 U.S.C. § 1331 now provides:

The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,-000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States except that no such sum or value shall be required in any such action brought against the United States, any agency thereof, or any officer or employee thereof in his official capacity.

**4.** *Compare Hill v. United States*, 571 F.2d 1098, 1102 (9th Cir. 1978) (the language of § 702 constitutes a blanket waiver of sovereign immunity as to a broad category of actions against the government), *with Lee v. Blumenthal*, 588 F.2d 1281 (9th Cir. 1979) (§ 702 is not a waiver of sovereign immunity where it conflicts with existing limitations on the district court, such as the Tucker Act, 28 U.S.C. §§ 1346(a)(2), 1491).

■ I conclude that there is no waiver of sovereign immunity under § 702 to pursue an action under § 1331, especially under the circumstances of this case where a contract dispute is involved.[5] I agree with the reasoning of the Ninth Circuit in *Lee v. Blumenthal*, 588 F.2d 1281 (9th Cir. 1979), and the Second Circuit in *Watson*, that the terms of the Tucker Act, 28 U.S.C. §§ 1346(a)(2) and 1491 preclude district court jurisdiction under § 1331, regardless of the APA amendment's effect on the defense of sovereign immunity under § 1331. Even under the permissive interpretation of *Jaffee* sovereign immunity is not waived because under the facts of this case, statutory review of the Bureau's actions regarding the contract is available under the Tucker Act.

### III

■ Plaintiff characterizes its case as one arising under federal law and regulations governing government contracts,[6] rather than as a dispute arising under the contract. This fine distinction is insufficient to circumvent the jurisdiction of the appropriate court. The Court of Claims has exclusive jurisdiction over contract actions against the United States where the amount in controversy exceeds $10,000. 28 U.S.C. §§ 1346(a)(2), 1491. *See International Engineering Co., Div. of A-T-O, Inc. v. Richardson*, 512 F.2d 573, 577 (D.C. Cir. 1975), *cert. denied*, 423 U.S. 1049, 96 S.Ct. 774, 46 L.Ed.2d 636 (1976), *Marcus Garvey Square, Inc. v. Winston Burnett Constr.*, 595 F.2d 1126, 1132 (9th Cir. 1979), Wright, Miller & Cooper, *Federal Practice & Procedure* § 4101, at 210 (1976). Through the Tucker Act the United States has consented to be sued for money damages in disputes "upon any express or implied contract with the United States." 28 U.S.C. § 1491, *United States v. Sherwood*, 312 U.S. 584, 590, 61 S.Ct. 767, 771, 85 L.Ed. 1058 (1941), *Whiskers v. United States*, 600 F.2d 1332 (10th

---

Although the Tenth Circuit has not passed directly on this question, in *Merrion v. Jicarilla Apache Tribe*, 617 F.2d 537 (10th Cir. 1980), it permitted an action for injunctive relief to proceed against the Secretary of the Interior stating that an action could be maintained under the 1976 amendments to 5 U.S.C. § 702. The court did not state the basis for jurisdiction and at best only implied acquiescence in the notion that § 702 waived sovereign immunity.

5. Plaintiff maintains that sovereign immunity does not prevent a suit against a federal officer who is acting in excess of his authority. *See Pan American Petroleum Corp. v. Pierson*, 284 F.2d 649, 651 (10th Cir. 1960). Plaintiff has named the United States in this action as well as four government officials. Plaintiff's argument, of course, does not apply to a suit against the United States itself and the bar of sovereign immunity remains unless explicitly waived. *United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976). The two exceptions to sovereign immunity of government officials are described by the Supreme Court in *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949): "where the officer's powers are limited by statute, his actions beyond those limitations are considered individual and not sovereign actions;" and where "the power has been conferred in form but the grant is lacking in substance because of constitutional invalidity." *Id.* at 689–91, 69 S.Ct. at 1461 & 1462.

I cannot entertain plaintiff's claim that the Bureau's or the Contracting Officer's actions were arbitrary, capricious and outside the scope of the contract under the first exception. Although the immunity defense does not bar judicial review of an officer's acts if they "conflict with the terms of his valid statutory authority," *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. at 695, 69 S.Ct. at 1464, "the fact that defendant's acts were wrongful or erroneous is not sufficient to demonstrate that they are outside the scope of his authority." Wright, Miller & Cooper, *Federal Practice & Procedure* § 3655 (1976). Plaintiff's claim regarding the contracting officer is that his decision directing changes and corrective construction was not within the terms of the contract, not that he was outside his statutory authority to make such a decision. This is a matter of contract interpretation and the fact that the decision may be incorrect does not create a bar to sovereign immunity. *See Pan American Petroleum Corp. v. Pierson*, 284 F.2d at 652.

6. The complaint states: "The dispute arises under the Federal Property and Administrative Services Act, 41 U.S.C. §§ 251–260. The Contract was bid, executed, and administered pursuant to 41 U.S.C. §§ 5 and 252, and must be administered in accordance with 41 U.S.C. §§ 321 and 322, Federal Procurement Regulations (41 C.F.R., Ch. 1), and Interior Procurement Regulations (41 C.F.R., Ch. 14)."

Cir. 1979), *cert. denied,* 444 U.S. 1078, 100 S.Ct. 1028, 62 L.Ed.2d 761 (1980). Furthermore, under § 1491 the Court of Claims has jurisdiction to "render judgment upon any claim against the United States founded ". . . upon . . . any Act of Congress, or any regulation of an executive department. . . ." Therefore this action is appropriately one for the jurisdiction of the Court of Claims.[7]

I agree with other courts which have resolved this question, *see Lee v. Blumenthal,* 588 F.2d at 1282, and *Watson v. Blumenthal,* 586 F.2d at 928–29, that it is a simplistic approach to pigeonhole a dispute such as this as either one "founded upon" a contract or "arising under" a statute or regulation. Although this dispute requires interpretation of the federal law and regulations regarding procurement and administration of government contracts, the gravamen of the complaint is one based upon the contract itself.

The resolution of this dispute rests, *inter alia,* upon determination of whether the changes and corrective construction ordered and completed between March, 1977, and March, 1978, and those directed to be completed in January, 1979, are within the terms of the contract, whether changed conditions support a claim for equitable adjustment for corrections made, or whether cardinal changes have been ordered resulting in breach of the contract. *See, e. g., Turnkey Enterprises, Inc. v. United States,* 597 F.2d 750 (Ct.Cl.1979) (changed site conditions resulting from weather not supportive of claim for equitable relief), *General Dynamics Corp. v. United States,* 585 F.2d 457 (Ct.Cl.1978) (cardinal changes ordered by government are outside scope of contract and equitable adjustment is required; changes ordered within change clause is question of fact and law), *Arundel Corp. v.*

*United States,* 515 F.2d 1116 (Ct.Cl.1975) (to support changed conditions claim, material change in conditions must be encountered).

Determination of these matters turns on the interpretation of the contract under the standard of review set forth in the Wunderlich Act, 41 U.S.C. §§ 321 and 322. Section 321 limits judicial review of a final and conclusive decision in a dispute involving a question arising under a government contract to allegations of fraud by the official, his representative, or a board making the decision. The decision is final unless "fradulent [sic] or capricious or arbitrary or so grossly erroneous as necessarily to imply bad faith, or is not supported by substantial evidence." 41 U.S.C. § 321, *United States v. Utah Construction & Mining Co.,* 384 U.S. 394, 399, 86 S.Ct. 1545, 1548, 16 L.Ed.2d 642 (1966), *Crown Coat Front Co., Inc. v. United States,* 386 U.S. 503, 513, 87 S.Ct. 1177, 1183, 18 L.Ed.2d 256 (1967), *Dravo Corp. v. United States,* 594 F.2d 842, 845 (Ct.Cl.1979), *Robert L. Guyler, Co. v. United States,* 593 F.2d 406, 412 (Ct.Cl.1979).

Section 322 prohibits government contract provisions from making administrative decisions final as to any question of law. Where an ultimate determination regarding a contract turns on a question of law, such as whether the changes ordered were cardinal and thus in breach of the contract, a court is not bound by the government officer's or board's decision. *Monroe M. Tapper, Etc. v. United States,* 602 F.2d 311, 313 (Ct.Cl.1979), *Astro-Space Laboratories, Inc. v. United States,* 470 F.2d 1003, 1008–09 (Ct.Cl.1972), *Foster Construction C. A. & Williams Bros. Co. v. United States,* 435 F.2d 873, 880 (Ct.Cl.1970). Because the claim here is essentially one grounded in contract, and adequate resolution is available under established proce-

---

7. Please take further note that although the Contract Disputes Act of 1978 is not controlling in this case, the Act, Public Law 95–563, 41 U.S.C. §§ 601–613, gives the Court of Claims exclusive jurisdiction over disputes relating to government contracts. The legislative history shows that Congress eliminated district court jurisdiction over government contract claims because the Court of Claims "historically has

been the court of greatest expertise in Government contract claims." S.Rep.No. 1118, 95th Cong., 2d Sess. 10, *reprinted in* [1978] U.S.Code Cong. & Admin.News, pp. 5235, 5244. A review of the cases reviewing agency action regarding government contract claims under the Wunderlich Act, 41 U.S.C. §§ 321–322, reveals that practically all are brought in the Court of Claims.

dures for review of decisions made regarding government contracts, I hold that its determination rests exclusively with the Court of Claims.[8]

## IV

■ Further, I recognize that the amendments to the Administrative Procedures Act, specifically § 702, have no impact on Tucker jurisdiction. *See Califano v. Sanders*, 430 U.S. at 105, 97 S.Ct. at 984, *Watson v. Blumenthal*, 586 F.2d at 932–34. The amendments to the APA do not confer "authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." APA § 702. The APA amendments were not intended to afford plaintiff an additional remedy when one has already been provided. *Sea-Land Service, Inc. v. Brown*, 600 F.2d 429, 433 (3d Cir. 1979). *See also International Engineering Co., Div. of A-T-O, Inc. v. Richardson*, 512 F.2d at 580, *Lee v. Blumenthal*, 588 F.2d at 1283, *American Science and Engineering, Inc. v. Califano*, 571 F.2d 58, 63 (1st Cir. 1978), *Warner v. Cox*, 487 F.2d 1301, 1306 (5th Cir. 1974). As the Third Circuit pointed out in *Sea-Land*, Congress implicated the Tucker Act as the type of preexisting remedy that was not to be affected by the amendments [9] by commenting in the House Report that "the partial abolition of sovereign immunity brought about by this bill does not change existing limitations on specific relief, if any, derived from statutes dealing with such matters as government contracts. . . ." H.R.Rep.No.1656, 94th Cong., 2d Sess. 12–13, *reprinted in* [1976] U.S.Code Cong. & Admin.News, pp. 6121, 6133.

## V

■ Having determined that this action is founded upon a contract and within the exclusive jurisdiction of the Court of Claims, a response is required to plaintiff's argument that the relief it seeks is injunc-

tive and declaratory rather than one for damages, relief which is not available in the Court of Claims. While it is generally true that the Court of Claims is without authority to grant injunctive and declaratory relief, *Richardson v. Morris*, 409 U.S. 464, 465, 93 S.Ct. 629, 630, 34 L.Ed.2d 647 (1973) (per curiam), *United States v. King*, 395 U.S. 1, 5, 89 S.Ct. 1501, 1503, 23 L.Ed.2d 52 (1968), *Glidden v. Zdanok*, 370 U.S. 530, 557 (1964), I also have no power to grant injunctive or declaratory relief unless I have an independent basis of jurisdiction for doing so. *See American Science & Engineering, Inc. v. Califano*, 571 F.2d at 61–62, *International Engineering Co., Div. of A-T-O, Inc. v. Richardson*, 512 F.2d at 577 n. 4. A district court, when exercising concurrent jurisdiction, may only adjudicate claims which would also be maintainable in the Court of Claims. *United States v. Sherwood*, 312 U.S. at 590–91, 61 S.Ct. at 771–72. As discussed, *supra*, § 1331 and the Administrative Procedures Act do not provide an independent basis of jurisdiction or impact upon the existing jurisdiction of the Court of Claims. Therefore, my remedial powers are limited to that of the Court of Claims.

■ Further, plaintiff seeks reimbursement for corrective construction performed between March, 1977, and March, 1978, *albeit* by means of a request for declaratory judgment. It appears that the primary purposes of plaintiff is to obtain money from the government for corrective construction completed and to avoid expending money for further corrective construction. All of this may be required if under the terms of the contract the contracting officer was factually correct that such directives were within the contract and the maintenance warranty.

It is established that Court of Claims jurisdiction can not be evaded by framing a district court complaint to seek only injunctive, mandatory, or declaratory relief

---

8. Plaintiff claims that the corrective construction performed and requested involves $2 to 4 million dollars.

9. Of course, the Third Circuit's position, as noted in *Jaffee, supra*, is that the amendments to the APA abrogated sovereign immunity in equitable actions, a position to which I do not adhere in this matter.

against government officials or the United States. *Hoopa Valley Tribe v. United States*, 596 F.2d 435, 436 (Ct.Cl.1979). *See also Bakersfield City School Dist. v. Boyer*, 610 F.2d 621, 629 (9th Cir. 1979), *American Science and Engineering, Inc. v. Califano*, 571 F.2d at 61, *Sherar v. Harless*, 561 F.2d 791, 793–94 (9th Cir. 1977), *Alabama Rural Fire Ins. Co. v. Naylor*, 530 F.2d 1221, 1226–30 (5th Cir. 1976), *International Engineering Co., Div. of A-T-O, Inc. v. Richardson*, 512 F.2d at 573, *Warner v. Cox*, 487 F.2d at 1304. To allow the district court to grant relief in excess of the jurisdictional limits of the Court of Claims in this case would undermine the jurisdiction of both. The resolution of this contract dispute is more appropriately within the expertise of the Court of Claims and the damages remedy is adequate. *See Alabama Rural Fire Ins. Co. v. Naylor*, 530 F.2d at 1229–30, *International Engineering Co., Div. of A-T-O, Inc. v. Richardson*, 512 F.2d at 580. *See also Ove Gustavsson Contracting Co. v. Floete*, 278 F.2d 912 (2d Cir.), *cert. denied*, 364 U.S. 894, 81 S.Ct. 225, 5 L.Ed.2d 188 (1960).

In addition, the Court of Claims has limited equitable jurisdiction incident to its jurisdiction. *Pauley Petroleum, Inc. v. United States*, 591 F.2d 1308 (Ct.Cl.1979), *cert. denied*, 444 U.S. 898, 100 S.Ct. 206, 62 L.Ed.2d 133 (1980). The Court of Claims may issue a declaratory judgment where "it is tied and subordinate to a monetary award." *Austin v. United States*, 206 Ct.Cl. 719, 723, *cert. denied*, 423 U.S. 911, 96 S.Ct. 215, 46 L.Ed.2d 140 (1975), *quoted in Gentry v. United States*, 546 F.2d 343, 355 (Ct.Cl. 1976). Thus, the Court of Claims may determine whether the corrective construction here warrants reimbursement or equitable adjustment and order such if the directed changes were not within the scope of the contract. Further, under § 1491 the Court of Claims may remand appropriate matters to administrative agencies with such directions as that court deems proper and just. 28 U.S.C. § 1491.

## VI

Because I have determined that jurisdiction of this matter is exclusively within the Court of Claims, I also decline to pass on the determination of whether Groves has adequately exhausted its administrative remedies under the disputes clause of the contract. It is to be borne in mind, however, that the Supreme Court has made clear that in disputes under a government contract "the contractor must seek the relief provided under the contract or be barred from any relief in the courts." *Crown Coat Front Co., Inc. v. United States*, 386 U.S. at 512, 87 S.Ct. at 1182. *See also United States v. Utah Construction Co.*, 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966).

## VII

Finally, Groves invokes the district court's mandamus jurisdiction, 28 U.S.C. § 1361, to compel the Bureau and its officers not to require plaintiff to perform further construction or to declare plaintiff in breach, and to reimburse plaintiff for construction performed. This attempt to avoid the exclusive jurisdiction of the Court of Claims is rejected. *See American Science and Engineering, Inc. v. Califano*, 571 F.2d at 64. The mandamus statute does not grant jurisdiction for purposes of injunctive or declaratory relief. *McQueary v. Laird*, 449 F.2d 608 (10th Cir. 1971). Rather, this statute relating to federal officers, employees and agencies authorizes the courts to issue mandamus only to require exercises of permissible discretion, or to compel performance of ministerial duties. *Schulke v. United States*, 544 F.2d 453, 455 (10th Cir. 1976). Because an adequate remedy exists in the Court of Claims, mandatory action is inappropriate and unavailable. *See Carter v. Seamans*, 411 F.2d 767, 773 (5th Cir. 1969), *cert. denied*, 397 U.S. 941, 90 S.Ct. 953, 25 L.Ed.2d 121 (1970) (mandamus does not supersede other remedies, but rather comes into play where there is a want of such remedies.) Moreover, Congress never intended the extraordinary writ of mandamus to be converted into a device for obtaining piecemeal solutions of contractual disputes to which the United States is a party. *Watson v. Blumenthal*, 586 F.2d at

935 (*citing Massachusetts v. Connor*, 248 F.Supp. 656, 660 (D.Mass.1965), *aff'd per curiam*, 366 F.2d 778 (1st Cir. 1966)).

IT IS ORDERED that this case be and hereby is dismissed.