C. Allen SCHELL, et al., Plaintiffs,

v.

NATIONAL FLOOD INSURERS ASSOCIATION, Continental National Assurance Co., Secretary of the U.S. Dept. of Housing and Urban Development, U.S. Dept. of Housing and Urban Development, and the United States of America, Defendants.

Civ. A. No. 80–K–244.

United States District Court,
D. Colorado.

Aug. 13, 1981.
Supplemental Opinion Aug. 27, 1981.

David L. Kofoed, Denver, Colo., for plaintiffs.

Bruce Menk, John R. Trigg, Hall & Evans, Denver, Colo., for all defendants except federal defendants.

R. J. Brumbaugh, Asst. U.S. Atty., Denver, Colo., for federal defendants.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

Plaintiffs' two-count amended complaint stems from the flood of the Big Thompson Canyon in July, 1976. Plaintiffs allege that defendants committed themselves to publicize to the plaintiffs the availability of flood insurance under the National Flood Insurance Act, 42 U.S.C. §§ 4001–4127. Count I alleges that defendants' failure to publicize negligently and proximately caused injury to the plaintiffs. Count II alleges that plaintiffs were third-party beneficiaries of provisions of express and implied contracts between the defendants that obligated defendants to publicize the availability of the insurance. Under each count plaintiffs seek damages equal to the maximum amount for which they could have been insured under the program.

In May, 1980 both defendant Continental National Assurance Company (CNA) and the federal defendants filed motions to dismiss. I denied these motions without prejudice on June 5, 1980 to allow plaintiff more discovery. The federal defendants then refiled their motion to dismiss on October 22, 1980. CNA filed two motions for summary judgment: on August 21, 1980 on Count I, and on March 20, 1981 on Count II. These motions are now ripe for determination.

Parallel with these motions, the parties have also disputed the issue of personal jurisdiction over defendant National Flood Insurers Association. Plaintiffs served process on CNA, NFIA's Colorado servicing agent, and on James J. Ross, who was an NFIA employee. At a hearing on August 14, 1980 I stated that NFIA had not yet been properly served and I ordered plaintiffs' counsel to make whatever efforts

were necessary to serve it. In November, 1980 the assistant U.S. Attorney appeared specially on behalf of NFIA and moved to quash service of process stating that no adequate service had been made. Plaintiff filed a "Motion to Strike the Motion of NFIA to Quash Service of Process," on April 1, 1981 arguing that service on Mr. Ross was adequate to serve NFIA. At an April 2, 1981 status conference I denied this motion and took the motion to quash service of process under advisement. It is now ripe for determination.[1]

## I. SUBJECT–MATTER JURISDICTION

### A. Federal Defendants

Count II of the amended complaint is founded upon an "express or implied contract with the United States," and the amount in controversy with respect to each plaintiff is over $10,000. The Tucker Act, 28 U.S.C. §§ 1346(a), 1491, vests exclusive jurisdiction for such actions against the United States in the Court of Claims. *S. J. Groves & Sons Co. v. United States*, 495 F.Supp. 201, 206–07 (D.Colo.1980). I there-

fore do not have jurisdiction to hear Count II as it applies to the federal defendants.

Because Count I alleges negligence by the federal defendants, this court has jurisdiction under the Tort Claims Act, 28 U.S.C. § 1346(b). Section 2675(a), however, requires a claimant first to present his claim to the appropriate federal agency. Because only the first five plaintiffs in this case have so presented their claims, the negligence claims of all of the other plaintiffs against the federal defendants are barred.[2]

The first five plaintiffs[3] in this case filed claims with HUD sometime between September 5, 1978 and November 28, 1978.[4] The Big Thompson flood occurred on July 31, 1976. Under 28 U.S.C. § 2401(b) a tort claim against the United States is forever barred unless it is presented in writing to the appropriate federal agency "within two years after such claim accrues...."[5] Because either date of filing is more than two years after the flood, it is questionable whether the first five plaintiffs have complied with § 2401(b). How-

---

1. On April 20, 1981 the assistant U.S. Attorney wrote, informing me and the other parties that the U.S. Department of Justice had decided that it could no longer represent NFIA in any capacity, and that it had so informed NFIA's last known counsel. No one else has appeared on behalf of NFIA.

2. The amended complaint seeks to bring this case as a class action. I have not yet ruled on the question of class certification. However, even if this case were certified as a class action, each class member would still have to exhaust his administrative remedies before being entitled to any judicial relief. *Lunsford v. United States*, 570 F.2d 221, 223–24 (8th Cir. 1977); *Pennsylvania v. National Ass'n of Flood Insurers*, 520 F.2d 11, 23 (3d Cir. 1975); *Founding Church of Scientology v. Director, FBI*, 459 F.Supp. 748, 754 (D.D.C.1978).

3. The first five plaintiffs are Schell, Citron, Grimes and A. Dale and Marie Shearer.

4. The claim forms state the earlier date as the date of the claims; the Federal Emergency Management Agency's responses state that the claims were filed on the later date.

5. In full, 28 U.S.C. § 2401(b) states:

A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it is presented. A plain reading of this statute would allow a tort claim to proceed whenever it is filed within six months after a final denial by the agency, even if it was not presented to the agency within the two-year limit. Courts, however, have uniformly construed this statute to require a filing with the agency within two years after the claim accrues. See, e. g., *Camire v. United States*, 489 F.Supp. 998, 1001 (N.D.N.Y. 1980); *Frey v. Woodard*, 481 F.Supp. 1152 (E.D.Pa.1979); *Girard v. United States*, 455 F.Supp. 502 (D.N.H.1978); *Martin v. United States*, 436 F.Supp. 535 (S.D.Cal.1977). One court has gone so far as to construe the "or" in the statute to mean "and." *Sangeminio v. Zuckerberg*, 454 F.Supp. 206, 209 (E.D.N.Y. 1978). While I have grave doubts about construing a statute contrary to its plain reading, I hold here that it requires a claimant to present a tort claim to the agency within two years after it accrues to avoid having it be forever barred.

ever, the time when a cause of action accrues under this statute must be determined by the court in light of all of the surrounding circumstances. *United States v. LePatourel*, 593 F.2d 827, 830 (8th Cir. 1979). If a plaintiff first knew or should have known about the alleged wrong after the wrong occurred, the cause of action will accrue on the later date. *Zeidler v. United States*, 601 F.2d 527, 529–30 (10th Cir. 1979). On this issue there are two crucial unresolved questions of fact: when were the claims first filed with the agency and when did the cause of action first accrue. It is therefore inappropriate for me to grant the federal defendants' motion to dismiss on Count I on statute-of-limitations grounds.[6]

█ The federal defendants also argue that this action against them is barred by the retention of sovereign immunity under 33 U.S.C. § 702c, which provides:

No liability of any kind shall attach to or rest upon the United States for any damages from or by floods or flood waters at any place....

Although the language of this section is very broad, courts have held that it only applies when the alleged government negligence is connected with a flood control project. *Graci v. United States*, 456 F.2d 20, 23–27 (5th Cir. 1971), *cert. denied*, 412 U.S. 928, 93 S.Ct. 2752, 37 L.Ed.2d 155 (1973); see also *Callaway v. United States*, 568 F.2d 684, 686–87 (10th Cir. 1978). I hold that the National Flood Insurance Act should not be considered a flood control project under § 702c. The federal defendants cite *Britt v. United States*, 515 F.Supp. 1159 (M.D.Ala.1981), in support of their argument that flood insurance is a flood control project. That case held that § 702c barred suit against the United States for damages that resulted when plaintiffs relied upon a federal flood hazard map in

deciding where to build their houses. Flood hazard maps, like physical flood control projects, are intended to prevent flood damages. Because the National Flood Insurance Act is directed at compensation for, rather than prevention of, flood damages, see 42 U.S.C. § 4001(a), I hold that 33 U.S.C. § 702c does not apply to this case.

█ The federal defendants also cite 28 U.S.C. § 2680(a), (h) in support of their argument that Count I is barred by sovereign immunity. Section 2680(a) bars any claim by plaintiffs that the federal defendants improperly executed the National Flood Insurance Act, particularly 42 U.S.C. § 4020. Section 2680(a) does not bar claims based on an alleged breach of a duty beyond that imposed by statute.

█ Section 2680(h) bars any claim arising out of a misrepresentation by federal officials. I reject the federal defendants' argument that this provision applies to their failure to inform plaintiffs of the availability of insurance. See *Ramirez v. United States*, 567 F.2d 854, 856–57 (9th Cir. 1977) (en banc); *Ingham v. Eastern Air Lines, Inc.*, 373 F.2d 227, 238–39 (2d Cir.), *cert. denied*, 389 U.S. 931, 88 S.Ct. 295, 19 L.Ed.2d 292 (1967).

In summary, I have jurisdiction to hear the first five plaintiffs' tort claims against the federal defendants, but only to the extent that they are based on alleged breaches of duty that are not based on any statute or regulation, and only if these plaintiffs can successfully demonstrate that they complied with the two-year limitation of 28 U.S.C. § 2401(b).

### B. Non-federal Defendants

If this court has subject-matter jurisdiction over the federal defendants, then I can exercise pendent jurisdiction over the non-

---

**6.** Plaintiffs also argue that the federal defendants are estopped from asserting the statute of limitations because the denial letters stated that the claimants had a right to file suit on the denied claims in district court within six months of the mailing of the letters. This argu-

ment is without merit. The Federal Tort Claims Act is a limited waiver of sovereign immunity. If its terms are not complied with then I am totally without jurisdiction to hear an estoppel argument. *Best Bearings Co. v. United States*, 463 F.2d 1177, 1179 (7th Cir. 1972).

federal defendants,[7] because the claims against them stem from a "common nucleus of operative fact" and are such that plaintiff "would ordinarily be expected to try them all in one judicial proceeding." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). If, however, this court does not have jurisdiction over any of the claims against the federal defendants, then it will be necessary to determine whether there is an independent basis for jurisdiction over the non-federal defendants. To avoid later uncertainty, I consider this question now.

█ The National Flood Insurance Act imposes no statutory obligation upon the non-federal defendants to publicize the availability of flood insurance. See *Pennsylvania v. National Association of Flood Insurers*, 520 F.2d 11, 18 (3d Cir. 1975). In spite of this lack of statutory obligation, I find that this court still has jurisdiction over the claims against CNA and NFIA under 28 U.S.C. § 1331(a). Congress intended the National Flood Insurance Program to be uniform throughout the country. See 42 U.S.C. § 4001. Because of this intent, I hold that actions stemming from contract with federal agencies under the flood insurance program are governed by federal common law. See *United States v. Seckinger*, 397 U.S. 203, 209–10, 90 S.Ct. 880, 884, 25 L.Ed.2d 224 (1970); *United States v. County of Allegheny*, 322 U.S. 174, 183, 64 S.Ct. 908, 913, 88 L.Ed. 1209 (1944); *Pennsylvania v. National Association of Flood Insurers*, 378 F.Supp. 1339, 1345 n.15 (M.D.Pa.1974), *aff'd in part, rev'd in part on other grounds*, 520 F.2d 11 (3d Cir. 1975). See generally Anno., *The Supreme Court and the Post-Erie Federal Common Law*, 31 L.Ed.2d 1006, 1025–26 (1973). Because federal common law controls, this court has jurisdiction under 28 U.S.C. § 1331(a). *Illinois v. City of Milwaukee*, 406 U.S. 91, 99–100, 92 S.Ct. 1385, 1390–1391, 31 L.Ed.2d 712 (1972) (partially overruled on other grounds, *City of Milwaukee v. Illinois*, —— U.S. ——, 101 S.Ct. 1784, 68 L.Ed.2d 114 (1981)).[8]

## II. PERSONAL JURISDICTION OVER NFIA

█ The federal defendants have asserted that NFIA has never° been properly served and that I therefore cannot exercise personal jurisdiction over it. Plaintiffs respond with two arguments: CNA was served as an agent of NFIA, and James J. Ross was served as an agent of NFIA. I find both of these arguments to be without merit.

F.R.Civ.P. 4(d)(3) provides that an unincorporated association may be served "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent, or to any other agent authorized by appointment or law to receive service of process. . . ." Mr. Ross submitted an affidavit stating that he had never been a director, officer, or managing agent of NFIA, but was only a salaried NFIA employee. The federal defendants submitted an agreement stating that HUD assumed all of NFIA's flood insurance policies as of January 1, 1978, and that NFIA agreed to issue no new policies after that date. Counsel for the federal defendants, appearing specially on behalf of NFIA, argues that service on NFIA should be quashed because neither of the attempted methods was effective.

Plaintiffs argue that they have effectively served NFIA, first because CNA was NFIA's exclusive Colorado servicing agent, and, second, because the other defendants designated Mr. Ross as the "director of servicing company relations." In support of their argument, plaintiffs cite several cases holding that service on an agent is

---

7. The non-federal defendants in this case are CNA and NFIA. Process has been effectively served on CNA, but it is still disputed whether NFIA has been properly served. I consider the issue of personal jurisdiction over NFIA later in this opinion.

8. Plaintiffs also allege that there was a contract between CNA and NFIA. Although state law will govern the interpretation of any such contract, I may exercise pendent jurisdiction over claims stemming from it.

adequate if it is likely that the principal would in fact receive adequate notice.[9]

At the April 2, 1981 hearing I expressed my doubts whether service on either CNA or Mr. Ross was effective against NFIA because NFIA apparently no longer exists. I stated then that when an unincorporated association no longer exists, service can only be accomplished by serving all of its former members. There being no change in circumstances, I hold that NFIA has not been properly served and therefore grant its motion to quash.

### III. FAILURE TO STATE A CAUSE OF ACTION

#### A. Statutory Duty

 As I previously stated, the non-federal defendants had no statutory duty to publicize the availability of flood insurance. The federal defendants have fulfilled any statutory duty that they might have had under 42 U.S.C. § 4020:

> Once the Secretary has decided to disseminate information regarding the flood insurance program and has undertaken efforts toward that end, the Court is powerless to review either the timing, the scope, the manner or the method of those efforts because these are matters wholly within the Secretary's discretion. 520 F.2d at 26.

*Pennsylvania v. National Association of Flood Insurers,* 420 F.Supp. 221, 223 (M.D. Pa.1976). Further, the federal defendants would be immune from tort liability from any claim based on failure to carry out a statutory duty. 28 U.S.C. § 2680(a); *Colorado Flying Academy, Inc. v. United States,* 506 F.Supp. 1221, 1229 (D.Colo.1981). Any claim for relief must therefore be based solely on the alleged agreements between the defendants.

#### B. Duty Stemming From the Alleged Agreements

Plaintiffs cite several documents that they claim lead to the "inescapable conclu-sion" that there was an express or implied agreement between the defendants to publicize the availability of flood insurance. They place greatest reliance on a 1973 HUD publication entitled "The National Flood Insurance Program." That publication contains a series of questions and answers. Number 6 states:

> Q: What notice is given when a community becomes eligible?

> A: When a community becomes eligible, notice is published in the Federal Register, and officials of the community are advised by letter of the date that the sale of insurance will commence. Press releases are provided to local papers and radio and television stations. Local insurance agents and brokers are informed individually of the availability of coverage by NFIA.[10]

Plaintiffs also point to an NFIA "Flood Insurance Bulletin," which states:

> The objectives of this campaign are twofold:
>
> . . . . .
>
> 2) Inform the public that federally subsidized, low cost flood insurance is available in eligible communities.

---

> HUD has the responsibility for getting communities into the program. The insurance industry, through the National Flood Insurers Association, has the responsibility for flood insurance sales and service to the public.

> The industry has a professional obligation to the public it serves to inform them (sic) of the availability and benefits of this protection.

and to an NFIA Guidelines and Standards Book, which states,

> NFIA is also responsible for administering claim loss procedures and paying flood loss claims. NFIA is also committed to promoting the program and the

---

**9.** Plaintiffs apparently are relying on F.R.Civ.P. 4(d)(7) in making this argument.

**10.** Plaintiffs also cite a 1975 "HUD News," which contains a similar question and answer.

general dissemination of information about the flood program.[11]

Although these documents are far from conclusive evidence of the existence of any express or implied agreement to publicize, they do raise enough of a possibility that I find it inappropriate on a summary judgment motion to find that no agreement to publicize existed. However, even if such an agreement did exist, I hold that summary judgment is still appropriate.

### 1. Third-Party Beneficiary Theory

■ One count of plaintiffs' amended complaint alleges that plaintiffs were third-party beneficiaries of the alleged agreements between the defendants. Even if such agreements did exist, plaintiffs would still fail to state a cause of action. Rest. Contracts § 145 (1932) provides:

A promisor bound to the United States ... by contract to do an act or render a service to some or all members of the public, is subject to no duty under the contract to such members to give compensation for the injurious consequences of performing or attempting to perform it, or of failing to do so, unless

(a) an intention is manifested in the contract, as interpreted in the light of the circumstances surrounding its formation, that the promisor shall compensate members of the public for such injurious consequences, ...

Because plaintiffs have not offered any indication that any contracting party intended to compensate members of the public "for such injurious consequences," plaintiffs cannot claim any damages as third-party beneficiaries.[12] *Pennsylvania v. National Association of Flood Insurers*, 378 F.Supp. at 1347–49. Even if the various HUD publications are evidence of a contract, there is no evidence that the contract was to vest rights in the plaintiffs so that they could claim as third-party beneficiaries. See *McCullough v. Redevelopment Authority of Wilkes-Barre*, 522 F.2d 858, 867 n.27 (3d Cir. 1975).

*Martinez v. Socoma Companies*, 11 Cal.3d 394, 521 P.2d 841, 113 Cal.Rptr. 585 (1974) is instructive. There, the court held:

... the contracts nowhere state that either the government or defendants are to be liable to persons such as plaintiffs for damages resulting from the defendants' nonperformance. The benefits to be derived from the defendants' performance were clearly intended not as gifts from the government to such persons but as a means of executing the public purposes stated in the contracts and in the underlying legislation. Accordingly, plaintiffs were only incidental beneficiaries and as such have no right to recovery.

*Id.* at 397–98, 521 P.2d at 843, 113 Cal.Rptr. at 587. The court cited Rest. Contracts § 145 and stated,

... a government intent to confer such a direct right [to benefits] cannot be inferred simply from the fact that the third persons were intended to enjoy the benefits.

*Id.* at 401, 521 P.2d at 845, 113 Cal.Rptr. at 589. In closing, the court noted,

The fact that plaintiffs were in a position to benefit more directly than certain other members of the public from performance of the contract does not alter their status as incidental beneficiaries.

*Id.* at 406, 521 P.2d at 849, 113 Cal.Rptr. at 593 (citing Rest. Contracts § 145, illus. 1). Because the plaintiffs in the present case were likewise only "incidental beneficiaries," I hold that they cannot claim as third-party beneficiaries on a contract where the government is a party.[13]

---

**11.** Plaintiffs cite several other documents, which might subtly allude to the existence of implied agreements to publicize.

**12.** All but one of these alleged agreements have the United States or one of its agencies as a party. Plaintiffs also cite the CNA–NFIA Service Agreement, which states, "Servicing Company agrees to assist NFIA in its responsibilities for the promotion of the National Flood Insurance Program." Because I find that plain-

tiffs have no actionable rights against NFIA for its actions promoting the program, this agreement cannot create any additional actionable rights.

**13.** See also *Miree v. United States*, 538 F.2d 643 (5th Cir. 1976) (en banc), *vacated on other grounds*, 433 U.S. 25, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977). In this case the *en banc* majority adopted a previous dissent, which stated that members of the public could recover as third-

### 2. Negligence Theory

■ Plaintiffs' negligence claim is based on two alternate theories: that defendants negligently breached their contractual duty to the plaintiffs, or that defendants assumed, and then breached, a duty to the plaintiffs. I find both of these arguments to be without merit. On the breach-of-duty theory, both parties cite different passages of 65 C.J.S. Negligence § 4(8), which together state:

> Where the duty is owed to the public as such, no action lies on behalf of any individual for failure to perform such duty; but, where the duty is owed to, or intended for the benefit of, the individuals composing the public, failure to perform such duty gives rise to a cause of action in favor of anyone injured by such failure.

(footnotes omitted). The question here is whether defendants' duty was owed "to the public as such" or to "individuals composing the public." Rather than attempt to engage in semantic gymnastics, I hold that, here, where plaintiffs were only incidental beneficiaries of a contract, the parties to the contract did not owe them any duty. Because the alleged contracts are the sole source of any possible duty to the plaintiffs, their breach-of-duty argument must fail.

Plaintiffs' alternate negligence argument is based on an "assumption of duty" theory. They argue that, even if the defendants had no duty to advertise the availability of insurance, defendants should still be liable because they assumed a duty to advertise. I find that it is questionable whether defendants did in fact assume such a duty. However, even if they did, they are still entitled to summary judgment. Plaintiffs cite no case that supports their assumption-of-duty theory. Each of the cases that they cite [14] states an assumption-of-duty rule, but also bases its holding on plaintiff's reliance on defendant's actions. In the present case, plaintiffs state that they were unaware of defendants' alleged obligation to publicize until over two years after the flood. Plaintiffs therefore did not rely on defendants' alleged duty.

party beneficiaries only when the "contract manifests an intention that they be so compensated," citing Rest. Contracts § 145. 526 F.2d 679 at 687 (citation omitted). The en banc dissent argued that plaintiffs should be allowed to sue as third-party beneficiaries because they were intended beneficiaries of the contract. 538 F.2d at 648–50.

Plaintiffs have failed to state a cause of action under either the tort or the contract count of their amended complaint.

IT IS ORDERED that the motion to quash service of process, filed by the National Flood Insurers Association on November 10, 1980, is granted. It is further

ORDERED that the motions for summary judgment, filed by defendant Continental National Assurance Company on August 21, 1980 and March 20, 1981, are granted. It is further

ORDERED that the motion to dismiss, filed by the federal defendants on October 22, 1980, is granted. It is further

ORDERED that the amended complaint and this civil action are hereby dismissed. Each party to bear its or their own costs.

## SUPPLEMENTAL MEMORANDUM OPINION AND ORDER

In the Memorandum Opinion and Order dated August 13, 1981, judgment was entered for the defendants and against the plaintiff in this matter. As part of that ruling, I held that I lacked personal jurisdiction over defendant National Flood Insurers Association ("NFIA") because an unincorporated association that no longer exists can be served only by serving all of its former members, which was not done in this case.

I have been advised that NFIA does exist as an entity but has no office or full-time employees. However, even if I have jurisdiction over NFIA, this action would still be dismissed against NFIA because the plaintiffs have not stated a cause of action against that defendant for the reasons set forth in the Opinion with respect to defendant CNA. Accordingly, it is

ORDERED that this civil action is dismissed as to defendant the National Flood Insurers Association, as well as to all other defendants.

14. The three cases that plaintiff cites in support of this argument are: *Ingham v. Eastern Air Lines, Inc.*, 373 F.2d 227, 236 (2d Cir.), *cert. denied*, 389 U.S. 931, 88 S.Ct. 295, 19 L.Ed.2d 292 (1967); *In re Franklin National Bank Securities Litigation*, 445 F.Supp. 723, 733–34 (E.D.N.Y.1978); and *Lester v. Marshall*, 143 Colo. 189, 197–98, 352 P.2d 786, 791 (1960).