Robert D. POWERS, et al., Plaintiffs,

v.

UNITED STATES of America,
Defendant.

Civ. A. Nos. 91–A–352–N,
91–A–353–N, 91–A–354–S
and 91–A–355–S.

United States District Court,
M.D. Alabama, N.D.

March 17, 1992.

Maury D. Smith, Roland Nachman, Donald Jones, Jr., Balch & Bingham, Montgomery, Ala., James Martin, Eufaula, Ala., for plaintiff in CV–91–A–352N.

Maury D. Smith, Roland Nachman, Donald R. Jones, Jr., Balch & Bingham, Montgomery, Ala., B. Kincey Green, Archie Reeves, Selma, Ala., for plaintiff in CV–91–A–353–N.

Maury D. Smith, Roland Nachman, Donald R. Jones, Jr., Balch & Bingham, Montgomery, Ala., Joe C. Cassady, Cassady, Fuller & Marsh, Enterprise, Ala., for plaintiff in CV–91–A–354–S and CV–91–A–355–S.

Marie Louise Hagen, Trial Atty., Civil Div., Torts Branch, U.S. Dept. of Justice, Washington, D.C., Ken Vines, Asst. U.S. Atty., Montgomery, Ala., for U.S.

MEMORANDUM OPINION
AND ORDER

ALBRITTON, District Judge.

This cause is before the court for consideration of the United States' motion to dismiss pursuant to Rule 12(b)(1), *Fed. R.Civ.P.* Also pending before the court is plaintiffs' motion for class certification.

Because the court finds that the United States' motion to dismiss is due to be granted, plaintiffs' motion for class certification is due to be denied as moot.

## PROCEDURAL AND FACTUAL BACKGROUND

On April 1, 1991, plaintiffs, residents of the Alabama counties of Barbour, Coffee, Dale, Dallas and Montgomery, filed complaints against the United States seeking damages for losses which they suffered as a result of a flash flood that occurred March 17, 1990, through March 20, 1990.[1] *See* N.Y. Times, March 18, 1990, § 1, at 20, Col. 3. Plaintiffs do not have flood insurance that would otherwise compensate them for their losses. Plaintiffs maintain that they did not obtain flood insurance under the National Flood Insurance Program ("NFIP") because they were not aware that the Government made insurance available under the program. Plaintiffs allege that the Director of the Federal Emergency Management Agency ("FEMA") and other Government employees failed to make information about NFIP available to them and other similarly situated residents pursuant to the requirements of the National Flood Insurance Act. 42 U.S.C. § 4020.

█ Prior to filing the underlying action, the named plaintiffs filed administrative claims with FEMA. More than six months have passed and the claims have not been responded to; the claims have been effectively denied. 28 U.S.C. § 2675.

Eventually, plaintiffs filed this action against the United States seeking to impose liability under the Federal Tort Claims Act, 28 U.S.C. §§ 2671 *et seq.* (sometimes referred to as "FTCA"). Plaintiffs assert

this court's jurisdiction under 28 U.S.C. § 1346.

The United States moved to dismiss plaintiffs' complaints for lack of subject matter jurisdiction. The United States argues that the complaints should be dismissed because (1) plaintiffs' claims are barred under the discretionary function exception to the FTCA, 28 U.S.C. § 2680(a); (2) plaintiffs' claims are barred under the misrepresentation exception to the FTCA, 28 U.S.C. § 2680(h); (3) the United States is immune from suit for any damages caused by flood waters, 33 U.S.C. § 702c; and (4) the United States cannot be subject to liability for plaintiffs' damages because a private individual would not be liable under analogous circumstances, 28 U.S.C. §§ 1346(b), 2674.

The court has reviewed the United States' arguments and plaintiffs' responses thereto. The court finds that the United States' argument that it is immune from suit for damages caused by flood waters pursuant to 33 U.S.C. § 702c is dispositive.

## DISCUSSION

The United States enjoys sovereign immunity and cannot be sued except when Congress so provides. In 1946, Congress enacted the Federal Tort Claims Act creating a cause of action for tort claims against the United States, thereby waiving the Government's sovereign immunity, 28 U.S.C. §§ 1346(b), 2674; *United States v. Yellow Cab Co.*, 340 U.S. 543, 71 S.Ct. 399, 95 L.Ed. 523 (1951).

Prior to enacting the Federal Tort Claims Act, Congress provided certain sovereign immunity from tort claims in various statutes. Specifically, Section 3 of the Flood Control Act of 1928 provides that:

No liability of any kind shall attach to or rest upon the United States for any damage from or by floods or flood waters at any place....

---

1. *See Powers v. United States,* Civil Action No. 91–A–352–N for complaint of Barbour County residents; *Glenn v. United States,* Civil Action No. 91–A–353–N for complaint of Montgomery County and Dallas County residents; *Childs v.* *United States,* Civil Action No. 91–A–354 for complaint of Dale County residents; *Big/Little Stores, Inc. v. United States,* Civil Action No. 91–A–355–S for complaint of Coffee County residents.

33 U.S.C. § 702c. This provision bars suit against the United States for damages resulting from acts connected with any flood control projects. *Garci v. United States,* 456 F.2d 20, 27 (5th Cir.1971).[2] Stated differently, § 702c does not preclude government liability for conduct "wholly unrelated to any acts of Congress authorizing the expenditure of funds for flood control, or any action taken pursuant to such authorization." *Peterson v. United States,* 367 F.2d 271, 275 (9th Cir.1966).

■ The subsequent enactment of the Federal Tort Claims Act does not abrogate the sovereign immunity provided under § 702c. *United States v. James,* 478 U.S. 597, 106 S.Ct. 3116, 92 L.Ed.2d 483 (1986); *Florida East Coast R.R. Co. v. United States,* 519 F.2d 1184, 1192 (5th Cir.1975). *See also* 60 Stat. 842, 846–847 (listing specifically statutes revoked by FTCA). Thus, if an action is barred under § 702c, the action is subject to dismissal notwithstanding provisions of the Federal Tort Claims Act. Accordingly, the threshold determination before the court is whether the pending cause of action is within the scope of the sovereign immunity protection provided under § 702c.

An understanding of the legislative history and purpose of § 702c is essential to determining whether the complained of conduct is "connected with" any flood control projects.

As plaintiffs correctly point out, the Flood Control Act was enacted in response to the Mississippi River Valley flood providing "a comprehensive ten-year program for the entire [Mississippi River] valley, embodying a general bank protection scheme, channel stabilization and river regulation, all involving vast expenditures of public funds." *Sponenbarger v. United States,* 101 F.2d 506 (8th Cir.1939).[3] The Act provided for the largest public works project undertaken up to that time in the United

States. *James,* 478 U.S. at 597, 106 S.Ct. at 3116–17. In exchange for embarking on such a vast construction program to prevent or minimize the incidence of loss occurring from flood and flood waters by building various structures related to flood control, including dams, dikes and levees, the Government required absolute immunity. *Peterson,* 367 F.2d at 275–276. To that end, Congress enacted § 702c to place a limit on the amount of public funds that would be spent in connection with flood control programs by "safeguard[ing] the United States against liability of any kind for damages from or by floods or flood waters in the broadest and most emphatic language." *National Mfg. Co. v. United States,* 210 F.2d 263, 270 (8th Cir.1954). In fact, upon reviewing the legislative history of the Flood Control Act and the congressional debate records, the Supreme Court found that

> the sweeping language of § 702c was no drafting inadvertence. Congress clearly sought to ensure beyond doubt that sovereign immunity would protect the Government from "any" liability associated with flood.

*James,* 478 U.S. at 608, 106 S.Ct. at 3122.

With this guidance in mind the court will address whether the damages that result from the Government's alleged failure to inform plaintiffs of the availability of the flood insurance pursuant to the NFIP is "wholly unrelated to any acts of Congress authorizing the expenditure of funds for flood control, or any action taken pursuant to such authorization," and thereby, beyond the scope of immunity of § 702c.

■ Under the "wholly unrelated" standard, the determinative factor is the purpose of the program authorized by Congress. *Morici Corp. v. United States,* 681 F.2d 645, 648 (9th Cir.1982). So long as a project is authorized for flood control pur-

---

**2.** In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit issued prior to October 1, 1981.

**3.** Plaintiffs argue that because the Flood Control Act is limited to the operation of flood control projects, § 702c is not applicable to the pending claims.

poses, and the damage or injury is related to the use of that project, immunity attaches. *Id. See Mocklin v. Orleans Levee District*, 877 F.2d 427 (5th Cir.1989) (Although at the time of child's death, flotation channel was dredged for construction purpose and not flood control, the channels were deemed part of flood control project.) *Cf. Garci*, 456 F.2d at 26 (Flood damage allegedly caused by negligent design and construction of a navigation project are recoverable because project not related to flood control.) By focusing on the purpose of the project authorized by Congress, it becomes apparent that flood control involves more than structural undertakings; it includes any expenditure of funds related to flood control. *See National Mfg.*, 210 F.2d 263 (flood control project necessarily includes forecasting floods); *Britt v. United States*, 515 F.Supp. 1159, 1162 (M.D.Ala. 1981) (preparation and dissemination of flood hazard map pursuant to National Flood Insurance Act is an integral part of a congressionally-mandated flood control initiative.) Based on the court's review of the statute, the court finds that the National Flood Insurance Act of 1968 is a congressionally authorized expenditure of funds for flood control.

The National Flood Insurance Act was enacted to make previously unavailable flood insurance protection available to property owners in flood prone areas.[4] 42 U.S.C. § 4001 *et seq.* Recognizing that making such insurance available could create substantial expenditures to compensate claimed losses, Congress required the communities that participated in the national flood insurance program to adopt land use and control measures for flood plain management that were designed to reduce or avoid future flood damages. 42 U.S.C. § 4012(c). The failure to implement adequate flood control management subjects a community to suspension from the National Flood Insurance Program and no flood insurance would be available during the suspension. 42 U.S.C. § 4012a. *See generally Texas Landowners Rights Ass'n v. Harris*, 453 F.Supp. 1025, 1027 (D.D.C. 1978), *aff'd*, 598 F.2d 311 (D.C.Cir.1979).

Much like the devastation of the Mississippi River Valley in 1927 that motivated Congress to enact the Flood Control Act of 1928, the personal hardships and economic losses caused by ongoing periodic flood disasters motivated Congress to develop a national program that would ease the burden on the Nation's resources while protecting the public. The National Flood Insurance Act is a natural extension of the Flood Control Act. In enacting the National Flood Insurance Act, Congress recognized that "despite the installation of preventive and protective works and the adoption of other public programs designed to reduce losses caused by flood damage, these methods have not been sufficient to protect adequately against growing exposure to future losses." 42 U.S.C. § 4001(a)(2).

Initially, Congress authorized expenditures for construction undertakings and then realized that expenditures were necessary for unforeseen flood disasters that could not be controlled by structural projects. In addition to embarking on "a *vast construction program* to prevent or minimize the incidence of loss occurring from flood and flood waters," Congress authorized the development of a *vast insurance program* aimed at motivating localities to undertake preventive measures. Although Congress authorized this expenditure, it is reasonable to assume that the same concern over unlimited liability that was relevant to the enactment of the Flood Control Act existed with the enactment of the National Flood Insurance Act. With the government's sovereign immunity intact under the Flood Control Act, Congress authorized the expenditure of funds for the

---

4. Under the Act, flood insurance is not made available directly to individual landowners upon request, but to the property owners in communities that have been identified by FEMA as flood prone areas. The insurance is actually provided by private insurers who set rates and are subsidized pursuant to the relevant provisions of the Act. 42 U.S.C. §§ 4001(b), 4013–4018.

National Flood Insurance Act, a project connected to flood control. Thus, the court finds that the "broad and sweeping language" of § 702c, "No liability of any kind shall attach to or rest upon the United States for any damage from or by flood or flood water," extends to damages allegedly related to the National Flood Insurance Act.[5] Accordingly, the court finds that the United States is immune from suit, and that this court lacks subject matter jurisdiction in this cause.

For the foregoing reasons, it is ORDERED that the motion to dismiss filed by the United States is due to be and it is hereby GRANTED and this cause is DISMISSED with prejudice.

It is further ORDERED that the motion for class certification filed by plaintiffs be and it is hereby DENIED as moot.

---

5. In *Schell v. National Flood Insurers Ass'n,* 520 F.Supp. 150 (D.Colo.1981), the district court summarily decided that the National Flood Insurance Act is directed at compensation for, rather than prevention of, flood damages. *Id.* at 154, *relying on* 42 U.S.C. § 4001(a). This court disagrees with the *Schell* court's characterization of the Act, and finds that court's review of the Act to be cursory.